THE FORTY-SECOND LEGISLATIVE ASSEMBLY OF THE STATE OF MONTANA, AND FRANK MURRAY, SECRETARY OF STATE OF THE STATE OF MONTANA, PLAINTIFFS AND RELATORS, *v.* JOSEPH L. LENNON, CLERK AND RECORDER OF CASCADE COUNTY, MONTANA, DEFENDANT AND RESPONDENT.

No. 12008.
Submitted Feb. 5, 1971.
Decided Feb. 19, 1971.
481 P.2d 330

Robert L. Woodahl, Atty. Gen., Helena, Charles C. Lovell, Asst. Atty. Gen., argued, Great Falls, John Northey, Asst. Atty. Gen., argued, Helena, for plaintiffs and relators.

418

J. Fred Bourdeau, County Atty., argued, Great Falls, for defendant and respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an original proceeding in this Court by the present State Legislature and Secretary of State seeking a declaratory judgment determining certain of their legal rights concerning the calling, election of delegates, and implementation of a constitutional convention for the State of Montana.

The specific legal issues sought to be determined herein are:

1. May state and local officers serve as delegates to the constitutional convention? Is a delegate to the constitutional convention a "state officer"?

2. Does the phrase "elected in the same manner" in section 8, Article XIX of the Constitution of the State of Montana refer only to the constitutional provisions for election of representatives or does it also refer to contemporary statutory provisions for "nomination" and "election" of members of the house of representatives? May the Legislative Assembly provide for nonpartisan nomination and election of delegates to the constitutional convention?

3. If the house of representatives is reapportioned based on the 1970 census, shall the constitutional convention be apportioned on the basis of the house of representatives elected November 3, 1970 or the house of representatives to be elected November 7, 1972?

Plaintiffs and relators in this action are the Forty-second Legislative Assembly of the State of Montana and Frank Murray, the Secretary of State of the State of Montana. Defendant and respondent is Joseph L. Lennon, Clerk and Recorder of Cascade County, Montana. The latter two persons are public officials with prescribed duties concerning elections.

The background of the present controversy is undisputed. The 1969 Montana State Legislature, pursuant to authority contained in Article XIX, section 8 of the Montana Consti-

tution, enacted Chapter 65, Montana Session Laws of 1969, providing for a referendum election on the question of calling a constitutional convention to revise, alter, or amend the Constitution of Montana. This question was submitted to the electors of this state at the general election held on November 3, 1970, at which time 133,482 electors voted in favor of calling such constitutional convention and 71,643 electors voted against it. It then became the duty of the present legislative assembly to provide for the calling of such constitutional convention under Article XIX, section 8 of the Montana Constitution providing in pertinent part:

"* * * if a majority of those voting on the question shall declare in favor of such convention, the legislative assembly shall at its next session provide for the calling thereof."

The next legislative assembly mentioned therein is now in session and constitutionally limited to a session of 60 days. The legislative assembly now has under consideration a proposed constitutional convention enabling act designated House Bill 168 prescribing, among other things, the qualifications and manner of electing delegates to the constitutional convention.

This pending legislation, including permissible amendments thereto, has raised grave and bona fide legal questions concerning the authority and powers of the legislative assembly in enacting the required constitutional convention enabling act. The specific areas of legal controversy are defined and encompassed in the issues submitted to us for determination in this action.

Faced with this dilemma and the necessity of prompt resolution thereof, the legislative assembly enacted Senate Bill 6, now Chapter 3, Montana Session Laws of 1971, approved by the Governor and effective on January 18, 1971. This legislation authorized and directed the attorney general of Montana, on behalf of the legislative assembly and secretary of state, to institute an action in this Court under the Montana

Uniform Declaratory Judgments Act, Title 93, Chapter 89, R.C.M.1947, to determine the legal issues in controversy.

On January 21, 1971 the attorney general petitioned this Court for leave to file a complaint accordingly. The petition was heard by this Court on the same day. Thereafter, on the same day, this Court entered its order granting leave to file such original complaint for declaratory judgment and assumed original jurisdiction of the controversy. Personal service was ordered to be made forthwith on the defendant and respondent clerk and recorder of Cascade County who was required to answer by January 27 with briefs to be filed and oral argument presented at a hearing February 5. Such was duly accomplished.

At the conclusion of the hearing on February 5, this case was submitted to the Court for decision and taken under advisement. The pleadings disclose no factual dispute, presenting only legal issues for determination by this Court. This opinion constitutes the declaratory judgment of this Court determining the legal issues presented for decision.

At the outset, we will briefly discuss the jurisdiction of this Court to entertain an original proceeding under the Montana Uniform Declaratory Judgments Act in the instant case, before proceeding to determination of the ultimate issues involved in the present controversy.

A declaratory judgment action is a proper proceeding in which to reach and answer the legal issues raised in this proceeding. A court of record in Montana is specifically granted the power "to declare rights, status, and other legal relations" of a party (section 93-8901, R.C.M.1947) which "are affected by a statute" (section 93-8902, R.C.M.1947) and in which a declaratory judgment "will terminate the controversy or remove an uncertainty" (section 93-8905, R.C.M. 1947). This is precisely the situation that exists in the present case. Here we have a presently existing bona fide, justiciable, legal controversy concerning the authority of the legislative

assembly under the constitution and statutes of Montana in enacting mandatory enabling legislation for a constitutional convention. Resolution of the issues presented herein is necessary to eliminate or reduce a multiplicity of future litigation; to prevent interminable delay in the election of delegates, the formation, and the functioning of the constitutional convention; and to eliminate needless expenditure of public funds on procedures that otherwise might subsequently be declared illegal. One of the basic purposes of the Montana Declaratory Judgments Act is to provide a procedure for advance determination of such issues, thereby eliminating these otherwise detrimental results.

Under the circumstances of the present case, an original proceeding for declaratory judgment in the Supreme Court is likewise authorized. Jurisdiction is granted this Court to hear and determine "such other original and remedial writs. as may be necessary or proper to the complete exercise of its appellate jurisdiction" (Article VIII, section 3, Montana Constitution). A similar provision exists by statute (section 93-214, R.C.M.1947), and Montana case law is replete with authority sustaining the original jurisdiction of the Supreme Court in declaratory judgment actions in a variety of situations. State ex rel. Schultz-Lindsay v. Board of Equalization, 145 Mont. 380, 403 P.2d 635; Carey, State Treas. v. McFatridge,. 115 Mont. 278, 142 P.2d 229; Gullickson v. Mitchell, 113 Mont.. 359, 126 P.2d 1106; Bottomly v. Meagher County, 114 Mont. 220, 133 P.2d 770. The foregoing cases establish the original jurisdiction of the Supreme Court in a declaratory judgment. action where legal questions of an emergency nature are presented and ordinary legal procedures will not afford timely or· adequate relief. Such is the situation here. We have an urgent emergency situation in view of the mandatory legis-- lation required of the present session of the legislative assembly, the absence of any factual controversy but only pure·

legal questions that must ultimately be answered by this Court in any event, and ordinary legal procedures that will not afford timely relief.

Directing our attention to the first issue before us for determination, we find that it contains two questions which we answer as follows:

Any state and local officers who are prohibited by the constitution or laws of Montana from holding more than one office may not serve as delegates to the constitutional convention. A delegate to the constitutional convention is a "state officer" holding a public office of a civil nature.

Constitutional prohibitions against certain officers holding more than one office include state senators and representatives "during the term for which [they] shall have been elected," Article V, section 7, Montana Constitution; the governor, lieutenant governor, secretary of state, attorney general, state treasurer, state auditor, and superintendent of public instruction "during [their] term of office," Article VII, section 4, Montana Constitution; and justices of the supreme court and district judges "while [they] remain in the office to which [they have] been elected or appointed," Article VIII, section 35, Montana Constitution. (Bracketed words pluralized).

These restrictions prevent such officers from holding any other "public office" or "civil office" of the state, and these two terms are synonymous. State ex rel. Barney v. Hawkins, 79 Mont. 506, 257 P. 411. This Court has heretofore defined the requirements of a "public office" within the meaning of Montana constitutional proscriptions in *Barney* as follows:

"After an exhaustive examination of the authorities, we hold that five elements are indispensable in any position of public employment, in order to make it a public office of a civil nature: (1) It must be created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the Legislature; (2) it must

possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the Legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power, other than the law, unless they may be those of an inferior or subordinate office, created or authorized by the legislature, and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity and not be only temporary or occasional." 79 Mont. 528, 257 P. 418.

It is readily apparent that delegates to a constitutional convention possess the requirements listed in (1), (3), and (4) of *Barney*.

In our view delegates to a constitutional convention also "possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public" satisfying requirement (2) of *Barney*. Plaintiffs and relators argue that this requirement is not satisfied, drawing a distinction between officers of the executive, legislative and judicial branches of the *state government* and delegates to a constitutional convention who act as agents of the *people* occupying no position in any recognized branch of state government. Our attention has been directed to several cases from other states upholding such distinction under their particular state history and the particular provisions of their state constitutions. These cases are not persuasive as applied to the present controversy in Montana, being distinguishable on the basis of such factors as historical considerations peculiar to such state, legislative precedent, existing rather than proposed legislation, inherent legislative powers to call a constitutional convention, different constitutional provisions, and dissimilar issues presented for decision: State v. Doyle, 138 La. 350, 70 So. 322; Frantz v. Autry, 18 Okl. 561, 91 P. 193; Board of Supervisors of Elections v. Attorney Gen., 246 Md.

417, 229 A.2d 388; Harvey v. Ridgeway (Ark.1970), 450 S.W.2d 281; Wells v. Bain, 75 Pa. 39, 15 Am.Rep. 563; Baker v. Moorhead, 103 Neb. 811, 174 N.W. 430; and Chenault v. Carter, Ky., 332 S.W.2d 623.

In our view any distinction sought to be drawn in Montana between offices or positions in which the incumbent acts for and exercises powers in behalf of the state government as distinguished from the people is more artificial than real—an illusory distinction without an actual difference. Under the Montana Constitution, there is no distinction between the "sovereign power of government" referred to in *Barney* and "sovereign power of the people." All sovereign power emanates from the people. Article III, section 1, of the Montana Constitution provides:

"All political power is vested in and derived from the people; all government of right originates with the people; is founded upon their will only, and is instituted solely for the good of the whole."

A delegate to the constitutional convention exercises sovereign powers of a legislative character of the highest order. That the final product of such legislative authority is subject to referendum, renders it no less an exercise of sovereign power. The delegation of unlimited power is not essential to the exercise of sovereign power. To draw a distinction between other state officers and delegates to a constitutional convention, both of whom act as agents of the people exercising sovereign powers in their behalf, is to deny our basic concept of government.

The purpose of the Montana constitutional restrictions against certain officers serving as delegates to a constitutional convention is readily apparent. It is to insure independent consideration by the delegates of the provisions of the new constitution, to reduce concentration of political power at the constitutional convention by eliminating as delegates incumbent office holders, and to foreclose the possibility of

such officers creating new offices for themselves or increasing the salaries or compensation of their own offices. See Kederick v. Heintzleman, D.C., 132 F.Supp. 582, for the expression of similar principles in prohibiting a state senator from filing for the position of delegate to the Alaskan constitutional convention. These considerations cannot be given effect unless a delegate to the constitutional cconvention holds a "public office" thereby placing him within the ambit of constitutional prohibitions.

Requirement (5) of *Barney* that an office must have some permanency and continuity and not be only temporary or occasional in order to constitute a "public office" is satisfied in the case of a delegate to the constitutional convention. This requirement is a relative matter and must be interpreted in the light of the purposes for which the position was created. A delegate to the constitutional convention holds his position for the entire period of time the constitutional convention is in session. His position is permanent and continuous in the sense that it continuously exists until the duties for which it was created have been completed. It is not temporary or occasional in that it is a full time position for the length of time required for completion of the convention's work. While it is true that constitutional conventions are called but seldom, when a particular constitutional convention is called the delegates are elected for that particular constitutional convention alone and the convention possesses permanency and continuity until its purpose is completed; there is nothing temporary or occasional in the work of its delegates while the convention is in session and carrying out its duties. Contemporary experience notwithstanding, a public position need not be conceived and created in perpetuity in order to qualify as a public office.

Proceeding to the second issue for determination herein, we find it likewise encompasses two related questions which we answer in this manner:

426

The phrase "elected in the same manner" used in Article XIX, section 8, of the Montana Constitution refers both to constitutional and statutory provisions for "nomination" and "election" of members of the house of representatives. The legislative assembly may not now substantially change the election laws for delegates to the constitutional convention and accordingly may not now provide solely for nonpartisan nomination and election of such delegates.

Article XIX, section 8 of the Montana Constitution provides that the number of delegates to the constitutional convention shall be the same as the house of representatives and that the delegates "shall be elected in the same manner, at the same places, and in the same districts" as state representatives. The Constitution contains further general election requirements applicable to all elections. All elections must be "free and open," Article III, section 5; elections "shall be by ballot," Article IX, section 1; voters must meet certain age, citizenship and residence requirements, Article IX, section 3; and the candidate receiving the highest number of legal votes shall be declared elected, Article IX, section 13.

Statutory election procedures implementing these constitutional election requirements and providing a specific procedure for the election of delegates to the constitutional convention have been enacted and have been in effect at all times pertinent to this controversy. Section 23-3301, R.C.M.1947, expressly provides that delegates to a constitutional convention are chosen by the same nominating and primary election procedure as are members of the house of representatives. The same section expressly provides for a primary election for delegates to the constitutional convention who will be chosen at the ensuing general election. Section 23-3304, R.C.M.1947, provides for primary election filing by declaration by any person running for nomination on the ticket of a major political party; and section 23-3318, R.C.M.1947, provides for filing by nominating petitions by independent candidates and candidates

of new or minor political parties. Numerous other statutes exist relating to representative districts and apportionment implementing constitutional requirements.

At issue is whether the phrase requiring that constitutional delegates be "elected in the same manner" as members of the house of representatives appearing in Article XIX, section 8 of the Constitution refers only to constitutional requirements for the election of state representatives, or whether it encompasses both constitutional and statutory requirements for election of state representatives. We hold that the phrase "elected in the same manner" means exactly what it plainly says—that constitutional delegates are required to be elected by the same election procedures applicable to election of members of the house of representatives without limitation as to the source of such election procedures be they constitutional or statutory. Had the framers of the Constitution intended to limit this phrase to constitutional requirements only, they would hardly have used this particular language knowing that the Constitution contained only broad requirements for elections in general without specific constitutional procedures applicable to election of representatives. By their language coupled with the absence of specific constitutional procedures applicable to the election of representatives, the framers of our Constitution must have intended the requirement to apply to statutory election procedures for representatives to be subsequently enacted by the legislature and amended from time to time. We remain unimpressed with the applicability to Montana of three cited cases from other states to the contrary: Livingston v. Ogilvie, 43 Ill.2d 9, 250 N.E.2d 138; Baker v. Moorhead, 103 Neb. 811, 174 N.W. 430; and In re Opinion of the Justices, 76 N.H. 586, 79 A. 29. These holdings are understandable under their particular state history and their particular constitutional provisions, but their application to Montana in the light of its history and constitutional provisions is entirely unwarranted.

Continuing to the second question propounded on this issue,

the point of our holding is simply that the present legislative assembly cannot substantially change the manner of election of delegates to the constitutional convention from those existing at the time of the constitutional convention referendum election, nor provide for a substantially different manner of electing such delegates from that applicable to election of representatives. The question authorized to be submitted to the voters at the constitutional convention referendum was contained in Chapter 65, Montana Session Laws of 1969—''* * * whether the legislative assembly at the 1971 session, *and in accordance with Article XIX, section 8 of the Montana constitution,* shall call a convention to revise, alter, or amend the constitution of Montana." (Emphasis provided). This question was submitted to the electors.

We have heretofore held that the requirement of Article XIX, section 8 of the Montana Constitution requiring that delegates to the constitutional convention be elected "in the same manner" as members of the house of representatives comprehends statutory as well as constitutional election laws. The voters at the constitutional referendum election cast their votes on the basis of the then existing election laws for representatives and accordingly, constitution convention delegates. To now permit these laws to be substantially changed in midstream by this session of the legislative assembly is to permit a retroactive dilution of voting rights and a fundamental abuse of the elective franchise of voters at the constitutional convention referendum election. Article IX, section 9 of the Montana Constitution grants the legislature the power to pass laws "necessary to secure the purity of elections and guard against abuses of the elective franchise." Conversely, by implication, such constitutional provision prohibits the legislature from enacting laws contravening such goals.

At the time of the constitutional convention referendum election, the election laws applicable to nomination and election of members of the house of representatives and constitutional

convention delegates provided for partisan filing by candidates of major political parties by declaration, independent filing without party designation by nominating petition, a primary nominating election, and an ensuing general election. The then existing election laws provided for nonpartisan filing, nomination, and election in the case of judicial candidates only. Pending House Bill No. 168 provides for nonpartisan filing by nominating petition only and eliminates filing as a candidate of a political party, eliminates any primary election, and sets up a different manner of nomination and election of delegates to the constitutional convention than those applicable to nomination and election of members of the house of representatives. The legislative assembly can not thus substantially change the then existing election laws applicable to nomination and election of delegates to the constitutional convention.

As heretofore noted, the then existing election laws permitted the filing, nomination and election of "independent" candidates without party designation and these provisions, of course, are applicable to the nomination and election of delegates to the constitutional convention.

■ The final issue for determination we answer in this manner:

The constitutional convention must be apportioned on the basis of the 1970 census applicable to the apportionment of the house of representatives to be elected November 7, 1972.

Article VI, section 2 of the Montana Constitution provides in pertinent part:

"(1) The senate and house of representatives of the legislative assembly each shall be apportioned on the basis of population.

" (2) The legislative assembly following each census made by the authority of the United States, shall revise and adjust the apportionment for representatives and senators on the basis of such census."

Article III, section 29 of the Montana Constitution states

430

that the provisions of the Constitution are mandatory unless by express words they are declared to be otherwise. The 1970 United States census is now completed. This session of the legislative assembly must reapportion both houses on the basis of the 1970 United States census in accordancce with the foregoing Montana constitutional requirements. Such reapportionment necessarily affects the makeup of districts for the election of state senators and representatives and the number to be elected from each district. In short, it affects the manner of election of representatives. And as Article XIX, section 8 of the Montana Constitution requires that delegates to the constitutional convention be elected in the same number, from the same districts, and "in the same manner" as members of the house of representatives, it necessarily requires that delegates to the constitutional convention be apportioned in like manner. Such reapportionment is required of this session of the legislative assembly which must by law adjourn prior to the contemplated election of delegates to the constitutional convention. Accordingly, such delegates must be apportioned on the basis of the 1970 census applicable to the reapportioned house of representatives to be elected November 7, 1972.

At first glance our holding on this issue may appear to conflict with our holding with reference to nonpartisan nomination and election of delegates to the constitutional convention. On more penetrating analysis however, it is clear that there is no conflict. At the election of November 3, 1970, the electors voted on the basis of existing election laws. At that time the existing election laws then on the statute books provided for reapportionment by the current session of the legislative assembly at this time, which necessarily would be prior to the election of delegates to the constitutional convention. But in the case of nonpartisan nomination and election of delegates to the constitutional convention, there were

no existing election laws so authorizing or permitting. The distinction appears clear and the holdings harmonious.

An apparent further question that appears, in view of our holding here and as to Issue No. 2, is the time sequence schedule as set up in House Bill No. 168. The legislature proposes to accomplish the election of delegates, the convening of the convention, the completion of the convention's work, and other matters in time for submission to the people at the general election in 1972 of the *revised, altered,* or *amended* constitutional proposals. This, in our view, is permissible and does not constitute a "substantial" change from the "same manner" referred to in Article XIX, section 8. It is noted that Article XIX, section 8, refers to "manner", "place" and "district", but not specifically to time. Additionally, the Constitution contemplates special elections. The immediately foregoing discussion is meant in an advisory way only.

A further observation, albeit unsolicited, is that since the referendum uses the language "revise, alter, or amend the constitution" it must have been contemplated that the work of the convention might be partial or total and that the individual parts might be submitted to the people. Therefore each Article might be separately submitted.

A declaratory judgment is hereby entered in accordance with the foregoing opinion with court costs to be paid by the Forty-second Legislative Assembly, pursuant to Section 5, Senate Bill No. 6, Chapter 3, Montana Session Laws of 1971.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, DALY and CASTLES, concur.