No 12255

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

CHARLES H MAHONEY,

Relator,

-vs-

FRANK MURRAY, Secretary of State, State of Montana,

Respondent.

ORIGINAL PROCEEDING:

For Relator:

Philip W Strope, argued, Helena, Montana.
Robert L Woodahl, Attorney General, Helena, Montana.
John C Connor, Assistant Attorney General, Helena, Montana.
Lawrence D Huss, argued, Assistant Attorney General, Helena, Montana.

For Respondent:

John Risken, argued, Helena, Montana.

Amicus Curiae:

Wesley Wertz, argued, Helena, Montana.

---

Submitted: April 7, 1972

Decided: APR 2 1 1972

Filed: APR 2 1 1972

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an original proceeding seeking a writ of mandamus directing the Secretary of State to receive and file a declaration of nomination for public office, that of State Treasurer, by the relator. On ex parte application, this Court issued its order of April 3, 1972, accepting jurisdiction, ordering the Attorney General to be joined as a relator, and setting the matter for hearing on April 7, 1972.

Relator Charles H. Mahoney is a resident citizen of Jefferson County, Montana, and a qualified elector. Relator was elected on November 2, 1971, from District 12, comprising Jefferson, Broadwater and Lewis & Clark counties, as a member of the Constitutional Convention. Relator was elected as an Independent candidate.

The Constitutional Convention was called by the Forty-second Legislative Assembly, Chapter 296, Laws of Montana 1971, as amended by Chapter 1 of the First Extraordinary Session of the Forty-second Legislative Assembly. The amendments came about as a result of the case "The Forty-second Legislative Assembly of the State of Montana, and Frank Murray, Secretary of State of the State of Montana v. Joseph L. Lennon, Clerk and Recorder of Cascade County, Montana", reported in 156 Mont. 416, 481 P.2d 330, and hereinafter referred to as the Lennon case.

The Convention assembled, and its members were sworn with Relator Mahoney a member, in an organizational meeting on November 29, 1971. Thereafter, the Convention assembled again in plenary session on January 17, 1972. It continued to meet until noon on March 24, 1972, when, after motion made and carried, it "adjourned sine die".

Respondent Frank Murray is Secretary of State whose duties are set forth in Art. VII, Sec. 1, of the Montana Constitution, and in section 82-2201, et. seq., R.C.M. 1947. These duties include the filing of declarations of nomination for public office. Respondent Frank Murray is the same public officer who as a party sought declaratory judgment in the Lennon case.

Robert L. Woodahl, Attorney General of Montana, because of the constitutional issues involved, was ordered joined as a relator. Attorney General Woodahl, on January 28, 1972, had, in response to a request by the President of the Convention, issued an opinion appearing in Volume No. 34 of Attorney General's Opinions as Opinion No. 34, in regard to the eligibility of members of the Convention to become political candidates in the year 1972. Briefly, and we acknowledge before any facts concerning adjournment, election dates for Convention proposals, completion of work, or anything else, the opinion stated that members could, after adjournment sine die, serve in any public office. Because that opinion was rendered, it appeared the Attorney General should also be a relator.

Five days after the previously mentioned "adjournment sine die", Relator Mahoney attempted to file his declaration of nomination and filing fee for the office of State Treasurer. The Secretary of State refused to accept the filing and advised Relator Mahoney that his filing was refused as he was a duly elected member or delegate of the Constitutional Convention, " * * * since the Montana Supreme Court in [the Lennon case] appears to hold that a Member of the Constitutional Convention is a public officer coming within the Constitutional provisions prohibiting public officers from simultaneously holding more than one public office."

Following this occurrence, the present action was commenced by Relator Mahoney.

This Court accepted original jurisdiction, at least in part, due to the fact that the filing date for candidates for nomination for election to public office expires on April 27, 1972, and in fairness to all, time is short.

Respondent Murray appeared by answer. The answer set up three defenses, essentially (1) that there was no claim for relief stated; (2) that the purported "adjournment sine die" was not an adjournment in the sense of a "termination" in that the Convention adopted its Resolution No. 14 which

- 3 -

perpetuates the Convention for an indefinite time in the future by creating a committee with full authority to manage and conclude all of the Convention's procedural, administrative, and voter education affairs, and to spend funds of the Convention whether appropriated by the legislature, received from federal funds or otherwise; and (3) that Relator Mahoney is prohibited from holding two civil offices by Art. V, Sec. 7, of the Montana Constitution and this Court's decision in Lennon.

Oral argument was had with argument by counsel for Relator Mahoney, Relator Woodahl, Respondent Murray and by Amicus Curiae Wesley W. Wertz.

The petition of Relator Mahoney seeks a writ of mandamus and a reasonable attorney fee. The answer and brief of Respondent Murray would challenge the remedy of mandamus as being an improper remedy in any event. We need not dwell here on the appropriateness of the remedy. Whether mandamus would be an available and proper remedy would depend on whether Relator Mahoney is qualified to file for public office, notwithstanding the refusal of Respondent Murray. The basic question, therefore, is whether at the time of attempting to file for office Relator Mahoney was still a delegate and one who does presently "hold any public office" within the meaning of this Court's opinion in Lennon. Putting the first part of the basic question another way, does a delegate have a term of office?

Hereinafter all references to Articles shall be to the Constitution of Montana. Chapter 1 of the First Extraordinary Session, Vol. II, Laws of Montana 1971, amending Chapter 296, Laws of Montana 1971, shall be referred to herein as the Enabling Act.

Art. XIX, Sec. 8, provides:

> "The legislative assembly may at any time, by a vote of two-thirds of the members elected to each house, submit to the electors of the state the question whether there shall be a convention to revise, alter, or amend this constitution; and if a majority of those voting on the question shall declare in favor of such convention, the legislative assembly shall at its next session provide for the calling thereof. The number of members of the convention shall be the same as that of the house of representatives, and they shall be elected in the same manner, at the same places, and in the same districts.

- 4 -

The legislative assembly shall in the act calling the
convention designate the day, hour and place of its
meeting, fix the pay of its members and officers, and
provide for the payment of the same, together with the
necessary expenses of the convention.  Before proceed-
ing the members shall take an oath to support the
constitution of the United States and of the state of
Montana, and to faithfully discharge their duties as
members of the convention.  The qualifications of mem-
bers shall be the same as of the members of the senate,
and vacancies occurring shall be filled in the manner
provided for filling vacancies in the legislative
assembly.  Said convention shall meet within three
months after such election and prepare such revisions,
alterations or amendments to the constitution as may
be deemed necessary, which shall be submitted to the
electors for their ratification or rejection at an
election appointed by the convention for that purpose,
not less than two nor more than six months after the
adjournment thereof; and unless so submitted and ap-
proved by a majority of the electors voting at the
election, no such revision, alteration or amendment
shall take effect."

Art. V, Sec. 7 provides:

"No senator or representative shall, during the term
for which he shall have been elected, be appointed to
any civil office under the state; and no member of
congress, or other person holding an office (except
notary public, or in the militia) under the United
States or this state, shall be a member of either
house during his continuance in office."

Art. VII, Sec. 4, referring to state offices of governor, secretary

of state, attorney general, treasurer, auditor, superintendent of public

instruction and lieutenant-governor, states in part:

" * * * No officer mentioned in this section shall
be eligible to, or hold any other public office, except
member of the state board of education during his term
of office."

Art. VIII, Sec. 35, prohibits justices of the supreme court and judges

from holding other public office while he remains in office.

In the Enabling Act it is provided, in Section 2, that the number of

delegates shall be the same as provided for the election of members of the

house of representatives and Section 3 provides that the qualifications of

delegates shall be the same as that of members of the state senate.

Section 4(1) states:

"Delegates to the constitutional convention shall be
elected in the same manner as members of the house

- 5 -

of representatives * * *."

Section 5 requires the constitutional oath of office required by Art. XIX, Sec. 1. Section 6 provides for vacancies to be filled in the same manner as for legislative vacancies.

Section 7(6) states:

"It shall be the duty of the delegate elected to
assemble in plenary session in the chambers of the house
of representatives in the state capitol building in the
city of Helena, at 10:00 a.m. on January 17, 1972.
The convention, which may recess from time to time, shall
then remain in session as long as necessary."

Section 16 refers to pay and expenses as the same as legislators and in subs. (4) refers to "officers and employees of the state and its political subdivisions who are not prohibited by the Montana Constitution or Laws of Montana from serving as delegates * * *."

Section 21 provides for appropriations for the biennium ending June 30, 1973. Section 24 provides for repeal of the Enabling Act on June 30, 1973.

Relator Mahoney contends that his "term" expired on adjournment sine die on March 24, 1972. Respondent Murray contends the term is for two years, the same as that of a representative, beginning January 17, 1972 and ending January 17, 1974. Respondent Murray's position is essentially correct since the term continues to run until the repeal of the Enabling Act on June 30, 1973.

Referring now to the Enabling Act, the Legislature's intent seems clear. Delegates were elected for a term ending on repeal of the act; funds were provided until repeal of the act; the convention could remain in session "as long as necessary" subject to the repealer clause; its duties continued through submission of its proposals to the people at an election to be held after "adjournment" within a specified time as specified in Art. XIX, Sec. 8; its members or delegates were to be paid and treated in all other respects in the same manner as legislators, particularly as house of representative members.

- 6 -

In <u>Lennon</u> at page 422 of 156 Mont. this Court said:

"Directing our attention to the first issue before us for determination, we find that it contains two questions which we answer as follows:

"Any state and local officers who are prohibited by the constitution or laws of Montana from holding more than one office may not serve as delegates to the constitutional convention. A delegate to the constitutional convention is a 'state officer' holding a public office of a civil nature.

\* \* \*

"These restrictions prevent such officers from holding any other 'public office' or 'civil office' of the state, these two terms are synonymous. State ex rel. Barney v. Hawkins, 79 Mont. 506, 257 P. 411. \* \* \*"

This Court went on to say:

"In our view delegates to a constitutional convention also ' possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public' satisfying requirement (2) of <u>Barney</u>. Plaintiffs and relators argue that this requirement is not satisfied, drawing a distinction between officers of the executive, legislative and judicial branches of the <u>state government</u> and delegates to a constitutional convention who act as agents of the <u>people</u> occupying no position in any recognized branch of state government. Our attention has been directed to several cases from other states upholding such distinction under their particular state history and the particular provisions of their state constitutions. These cases are not persuasive as applied to the present controversy in Montana, being distinguishable on the basis of such factors as historical considerations peculiar to such state, legislative precedent, existing rather than proposed legislation, inherent legislative powers to call a constitutional convention, different constitutional provisions, and dissimilar issues presented for decision [citing cases] \* \* \*.

"A delegate to the constitutional convention exercises sovereign powers of a legislative character of the highest order. That the final product of such legislative authority is subject to referendum, renders it no less an exercise of sovereign power. The delegation of unlimited power is not essential to the exercise of sovereign power. To draw a distinction between other state officers and delegates to a constitutional convention, both of whom act as agents of the people exercising sovereign powers in their behalf, is to deny our basic concept of government."

"The purpose of the Montana constitutional restrictions against certain officers serving as delegates to a constitutional convention is readily apparent. It is to

- 7 -

insure independent consideration by the delegates of the
provisions of the new constitution, to reduce concentra-
tion of political power at the constitutional convention
by eliminating as delegates incumbent office holders, and
to foreclose the possibility of such officers creating
new offices for themselves or increasing the salaries or
compensation of their own offices.  See Kederick v.
Heintzleman, D. C., 132 F.Supp. 582, for the expression
of similar principles in prohibiting a state senator
from filing for the position of delegate to the Alaskan
constitutional convention.  These considerations cannot
be given effect unless a delegate to the constitutional
convention holds a 'public office' thereby placing him
within the ambit of constitutional prohibitions.

"Requirement (5) of Barney that an office must have some
permanency and continuity and not be only temporary or
occasional in order to constitute a 'public office' is
satisfied in the case of a delegate to the constitutional
convention.  This requirement is a relative matter and
must be interpreted in the light of the purposes for
which the position was created.  A delegate to the con-
stitutional convention holds his position for the entire
period of time the constitutional convention is in
session.  His position is permanent and continuous in the
sense that it continuously exists until the duties for
which it was created have been completed.  It is not
temporary or occasional in that it is a full time posi-
tion for the length of time required for completion of
the convention's work.  While it is true that constitu-
tional conventions are called but seldom, when a partic-
ular constitutional convention is called the delegates
are elected for that particular constitutional conven-
tion alone and the convention possesses permanency and
continuity until its purpose is completed; there is
nothing temporary or occasional in the work of its dele-
gates while the convention is in session and carrying
out its duties.  Contemporary experience notwithstanding,
a public position need not be conceived and created in
perpetuity in order to qualify as a public office."
(Emphasis supplied.)

The foregoing underlined words [while] in session, are the words

that Relator Mahoney stresses on his contention that adjournment sine die

ends his status or position.  However, that connotation cannot be placed on

the meaning of the two words "in session" as used in Lennon.  There the

Court did not have before it the situation we have now.  Rather, we have

almost the reverse.  The same purposes of the constitutional prohibitory

language referred to above apply equally to Constitution Convention members.

While we recognize that there may be some argument made that a state treasurer

does not have policy making functions, yet the same purposes of the prohibitions

- 8 -

apply to all constitutional officers. By our analysis of the Enabling Act, the Constitutional Articles pertinent, and our language in Lennon, we find the prohibitions applicable.

We also find by the language and analysis that the 'term' of the prohibition goes on to the repeal of the Enabling Act. Again, we give recognition to overall intent of the legislature to treating the members of the Convention as Legislators. The Enabling Act was drafted and enacted with Lennon and its language as the declaratory judgment guide that it was.

So far we have discussed the basic question in the light of the Enabling Act, the Constitution, and the Lennon judgment in the main. Now, we look to the Convention's actions. We referred before to the motion made and carried that the Convention "adjourned sine die". Amicus argues that, previously quoted Art. XIX, Sec. 8, provision setting the limits of an election for submission of proposals to the people, requires by its language an "adjournment" with a finality or termination of all functions, or that it become functus officio, before an election can be held on June 6, 1972. It seems plain to us that an adjournment referred to in Art. XIX, Sec. 8, need not have that finality with respect to all functions, but only with respect to finality of the revisions, alterations or amendments to the constitution to be submitted to the electorate.

At any rate, the Convention, on March 16, 1972, passed its Resolution No. 14 which, among all of the other proceedings of the Convention, is a matter of record in Respondent Murray's office. Respondent Murray does not question the validity or legality of Resolution No. 14.

Resolution No. 14 is as follows:

"WHEREAS, the Montana Constitutional Convention has nearly completed its substantive activities and is making arrangements for adjournment sine die in order to meet its election date commitment of June 6, 1972; and

"WHEREAS, prior to adjournment sine die the Convention will not be able to complete its procedural, administrative and voter education affairs, all of which must be concluded in an orderly and responsible manner; and

- 9 -

"WHEREAS, the Convention anticipates that it will need to establish an appropriate committee to manage and conclude all of its procedural, administrative and voter education affairs after adjournment sine die;

"NOW, THEREFORE, IT IS RESOLVED BY THE CONSTITUTIONAL CONVENTION OF THE STATE OF MONTANA AS FOLLOWS:

"1. The Convention hereby creates a committee to act with the President of the Convention on its behalf after adjournment sine die, delegating to it full authority to manage and conclude all of the Convention's procedural, administrative and voter education affairs, and to spend the Convention's funds therefore, but only within the limits of its appropriation and such other funds as the Convention may have.

"2. The Convention hereby appoints to said committee the President, Leo Graybill, Jr., who shall act as its chairman, and the following delegates: John Toole, Dorothy Eck, Bruce Brown, Jean Bowman, Margaret Warden, Fred Martin, Robert Vermillion, Katie Payne, Betty Babcock, Marshall Murray, Catherine Pemberton, John Schiltz, Thomas Joyce, George Harper, Bill Burkhardt, Jerome Loendorf, Oscar Anderson, Gene Harbaugh.

"3. No delegate may serve on the committee who shall seek public office in the primary election to be held on June 6, 1972. The President, as chairman of the committee, shall have authority to substitute other Convention delegates for any committee members named herein who may decide to seek public office.

"4. The Convention hereby delegates authority to the committee to receive, disburse and account for all Federal funds which the Convention may receive.

"5. The Convention also delegates authority to the committee to supervise and edit any and all voter education materials prepared on behalf of the Convention or by other persons relative to the work of the Convention.

"6. The committee shall terminate its work at such time as all of the Convention's procedural, administrative and educational affairs have been completed, and all requirements of the Enabling Act have been met."

In the Resolution the Convention states that it will not be able to complete its procedural, administrative or voter education affairs and it is necessary to create a Committee. From a reading of Section 1, it is obvious that the Convention continues to exist. The Committee acts on behalf of the Convention, in its place and stead. It carries on until the procedural, administrative and voter education affairs are concluded, and the money appropriated to it has been spent. These particular items of business are

- 10 -

substantial parts of the business of the Committee and the Convention. It would appear that the only thing that the Committee cannot do that the Convention did is propose further constitutional provisions or change or modify those proposed. Other than that, the Committee has all of the power of the Convention. This is the way that Respondent Murray interpreted the Resolution.

Anticipating that a delegate might wish to seek a public office, the Convention adopted Section 3 of Resolution 14.

It is agreed that Mahoney was not a member of the Committee appointed by this Resolution, but it is of interest to note that the Convention anticipated that some of its members might desire to go on to other public office, in spite of the fact that the business of the Convention was not finished. Not only did the Convention perpetuate itself, but it opened the door for members who aspired to other offices.

The Committee, in Section 4, has carte blanche authority as to the money, Federal or that left over from the Convention. We can see no difference in what the Convention was doing before March 24, 1972, and what the Committee was authorized to do, other than making proposals for inclusion in the new constitution. The final provision of Resolution 14, Section 6, states:

> "The committee shall terminate its work at such time as all of the Convention's procedural, administrative and educational affairs have been completed, and all re-quirements of the Enabling Act have been met." (Emphasis supplied.)

We emphasize here that we are not concerned in this case about the validity and legality of Resolution No. 14. In what we shall refer to as a companion case, #12260, State ex rel. Kvaalen v. Leo Graybill, Jr., et al., the validity of Resolution No. 14 is an issue.

For this additional reason, the contents of Resolution No. 14, Relator Mahoney's status as a delegate is continuing whether he, as an individual, has any duties or not. The fact is that the Convention, of which he is a member, still is in existence, albeit adjourned.

Accordingly, we find that Relator Mahoney now holds a public office,

and he is prohibited by the Constitution from holding another public office. His term has not expired, and he continues to be a delegate to the Convention. Respondent Murray was correct in refusing to file the declaration for nomination, and the petition for a writ of mandamus is denied.

_____
Associate Justice

We concur:

_____
Chief Justice

_____

_____

_____
Associate Justices