*137 MR. JUSTICE WEBER,
dissenting:
We are concerned here with the extent of the initiative rights of the citizens of Montana. In the 1972 Constitution, the people of Montana reserved all political power to themselves. Mont. Const. Article II, Section 1 states:
“All political power is vested in and derived from the people. All government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole.” By the same Constitution, the people of Montana reserved the right to amend the Constitution. Mont. Const. Article II, Section 2 states:
“The people have the exclusive right of governing themselves . . . They may alter or abolish the constitution and form of government whenever they deem it necessary.”
By a provision newly inserted in the 1972 Constitution, the people reserved the right to propose constitutional amendments by initiative, stating in Mont. Const. Article XIV, Section 9:
“(1) The people may also propose constitutional amendments by initiative. Petitions including the full text of the proposed amendment shall be signed by at least ten percent of the qualified electors of the state ....
“(2) The petitions shall be filed with the secretary of state. If the petitions are found to have been signed by the required number of electors, the secretary of state shall cause the amendment to be published as provided by law twice each month for two months previous to the next regular state-wide election.
“(3) At that election, the proposed amendment shall be submitted to the qualified electors for approval or rejection . . . .” (Emphasis supplied.)
These provisions emphasize the right of the people of Montana to amend the Constitution by initiative without going through any of the three branches of government. Our primary issue here is the extent of that right of initiative. Both CI-27 and CI-30 were certified by the Secretary of State to have the required number of signatures entitling the initiative to consideration at the “next regular statewide election”. A basic question is whether the people of Montana have a right to vote on these initiatives where the original votes have been found to be invalid because of the type of notice given by the office of the Secretary of State.
The majority opinion describes the application and proposed complaint filed by the plaintiff. It also describes the Secretary of State’s response to which was attached a proposed answer on his part. Next *138 the opinion describes the Attorney General’s written response in which he concluded that justiciability is required in a declaratory judgment action and is not present in the current proceeding.
Reference is then made to the petition to intervene for the limited purpose of seeking dismissal of the action. The majority opinion points out that the petition to intervene was filed for the limited purpose of seeking dismissal of the action. I find it necessary to more carefully review the papers filed by these Petitioners in Intervention and the rules which apply in intervention. It is true that their petition does indicate that a request is made for an order granting them the status of intervening defendants limited at this time to the right to raise issues relating to the dismissal of the application and reserving the question of general participation. This is an interesting concept which is not provided for in our rules of procedure. The Petitioners in Intervention carefully set forth a description of the parties constituting that group, pointing out that the “Montanans for the Preservation of Citizens’ Rights” is an ad hoc group of individual Montana citizens, voters, and taxpayers formed to preserve and protect constitutional rights, that CI-30 “threatens to take away and impair these existing constitutional rights,” and that “[individual group members are, therefore, individually directly adversely affected by the proposed measure.” The next paragraph refers to the Montana State AFL-CIO and points out that their rights are threatened or jeopardized by the initiative measure. In a similar manner the Women’s Law Caucus is described as a unique group whose members are individually and collectively adversely affected or threatened by CI-30. Next a number of individual persons are named whose rights of suit are stated to be adversely affected by CI-30. In summary, the petition states that all of these Petitioners in Intervention were plaintiffs/relators in the prior case before this Court and as such “they have a keen and ongoing interest in the disposition of the present matter.” By the wording of this petition, the Intervenors have met the requirements of Rule 24(a), M.R.Civ.P. which grants a right to intervene as a matter of right when an applicant claims an interest relating to the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant’s ability to protect that interest. Further, the Petitioners in Intervention have followed the procedure required under Rule 24(c), M.R.Civ.P. which requires the presentation of a motion to intervene accompanied by a pleading setting forth their defense. Attached to their petition, the Inter *139 venors have set forth an answer which responds to the complaint and petition on the part of plaintiff Marbut. This answer has been carefully drawn and demonstrates a real and significant controversy between the Petitioners in Intervention and Mr. Marbut.
In their petition for Intervention the petitioners state they “do not wish to supply the requisite adversity to the present collusive proceedings” and therefore ask that they be allowed to raise the issues relating to dismissal without being admitted as parties under the provisions of Rule 24. Petitioners in Intervention cite no authority for such an appearance under Rule 24. The parties seek a limited type of appearance while claiming the benefit of an intervention as a matter of right under Rule 24.
The Secretary of State has now filed a memorandum in which he points out that Rule 24, M.R.Civ.P. provides that a party who intervenes voluntarily is deemed to have appeared before the Court for all purposes. The Secretary of State requests that the motion to intervene by the Petitioners in Intervention be granted and that such petitioners be given “full party in interest” status. The Secretary of State does not cite any specific case authority for that position.
I conclude that the wording of Rule 24,. M.R.Civ.P. clearly warrants the issuance of an order approving the intervention of right by the Petitioners in Intervention. I further am unable to find anything in the Rules which justifies a petition to intervene for the limited purpose of seeking dismissal. I conclude there is a reasonable basis to enter an order of intervention.
The essence of the majority opinion is that there is no justiciable controversy between plaintiff Marbut and the Secretary of State and that the petition therefore should be denied. I do not take issue with the general authority which is quoted in the majority opinion defining the nature of the justiciable controversy which is required in various types of actions, including declaratory judgment proceedings. I do dispute the application of those rules of law to the present proceeding so far as CI-30 is concerned. I do agree with the holding of the majority so far as CI-27 is concerned because of the absence of real parties in interest in the issue regarding CI-27.
Our question is whether we should allow the filing of plaintiff Mar-but’s complaint and the answers by the Secretary of. State and the Petitioners in Intervention. The majority concludes there is an absence of a justiciable controversy and adverse parties. In Forty-Second Legislative Assembly v. Lennon (1971), 156 Mont. 416, 481 P.2d 330, an original proceeding was brought before this Court for declar *140 atory judgment. The proceeding sought a determination of whether state and local officers could serve as delegates and whether the legislature could provide for non-partisan nomination and election of delegates to the Constitutional Convention. The parties plaintiff in that case were the Legislature itself and the Secretary of State. The sole defendant was the Clerk and Recorder of Cascade County. This Court pointed out in its decision granting a declaratory judgment:
“Here we have a presently existing bona fide, justiciable, legal controversy concerning the authority of the legislative assembly ... in enacting mandatory enabling legislation for a constitutional convention. Resolution of the issues presented here is necessary to eliminate or reduce a multiplicity of future litigation; to prevent interminable delay . . . and to eliminate needless expenditure of public funds . . . One of the basic purposes of the Montana Declaratory Judgments Act is to provide a procedure for advance determination of such issues, thereby eliminating these otherwise detrimental results.”
Lennon, 481 P.2d at 332-33. That is the real basis on which this Court reached its declaratory judgment. No reference was made to the absence of any real parties in interest to establish a controversy. Clearly the Clerk and Recorder of Cascade County whose duties in the course of an election are largely ministerial could hardly be expected to afford the type of defense and the presentation of justiciable issues required under the various cases cited in the majority opinion. This Court concluded that because of the significant issues in the formation of the Constitutional Convention, it should take jurisdiction for declaratory judgment purposes even though there was no justiciable controversy with the named defendant and even in the absence of “real” parties in interest. This broad statement of the powers of this Court was established prior to the enactment of the 1972 Constitution.
Grossman v. State, Dept. of Natural Resources (Mont. 1984), [209 Mont. 427,] 682 P.2d 1319, 41 St.Rep. 804, was an original proceeding brought by a single taxpayer seeking a declaration that statutes allowing the issuance of coal severance bonds were unconstitutional. The unanimous opinion of the Court contains an extensive discussion of the rights of the citizen, resident and registered elector to bring this original declaratory judgment proceeding before the Supreme Court. The Court concluded:
“We therefore hold that this Court does have original jurisdiction to accept declaratory judgment proceedings where the issues have *141 impact of major importance on a state-wide basis, or upon a major segment of the state, and where the purpose of the declaratory judgment proceedings will serve the office of a writ provided by law . . Grossman, 682 P.2d at 1321. The Court discussed at some length the questions raised as to whether or not a single citizen had the right to bring such a proceeding and concluded that the Court had authority over both the subject matter and the parties. In a key statement which I find directly applicable to the present proceeding, the Court stated:
“We should without hesitancy recognize this case for what it appears to be: a test case designed to obtain a final judgment on the validity of coal severance tax revenue bonds so that if valid, the bonds will be marketable. We will no longer be qualmish about jurisdiction in a bond issuance case. When the issues are fairly stated, fully explored and vigorously contended, as they appear here, we have a justiciable controversy suitable for final resolution by this Court. Legal niceties must bend on occasion to the reality of the market. The living law moves with the times. (Emphasis added.) Grossman, 682 P.2d at 1326.
I would agree that our rules of procedure do allow the dismissal of the petition as to CI-30 on the grounds of the absence of a justiciable controversy and the absence of real parties in interest. However, in reaching that conclusion, I believe we are disregarding the broad principles set forth in both Lennon and Grossman.
The people of Montana signed sufficient petitions to qualify CI-30 for a state-wide election under Article XIV, Section 9 of the Constitution. Next the people approved CI-30 in the 1986 general election. This Court concluded that the notices were insufficient and voided the 1986 vote. A critical issue remains: Is CI-30 still “alive” so that the people of Montana retain the right to vote on CI-30 at the “next regular state-wide election?”
A companion issue of major importance is whether the “next regular state-wide election” is the primary election of June 7, 1988? If CI-30 is to be considered at that primary election, then the various notices must commence in April 1988. Time is critically significant. If CI-30 must be presented for a vote at the 1988 primary election, but there is a failure for any reason to properly present the same for vote, the issue may become moot without an opportunity on the part of the people of Montana to cast their vote.
I conclude that the interest and involvement of many citizens of Montana in the initiative process as it relates to CI-30 justifies the *142 conclusion that we are dealing with an issue of major importance on a state-wide basis. I conclude this meets the test of Grossman where this Court stated that even though Grossman was a “test case” designed to obtain a judgment, this Court would accept jurisdiction. I would apply the Grossman rationale to this case and conclude that here the issues are fairly stated, can be fully explored and vigorously contended, and we have a justiciable controversy which requires that “legal niceties must bend on occasion to the reality of the market.”
Rather than denying the petition of the plaintiff, as was done in the majority opinion, I would grant the petition and make the following provisions: I would direct the Clerk of this Court to immediately file the complaint of plaintiff Marbut and also to immediately file the answers on the part of the defendant Secretary of State and the Plaintiffs in Intervention. I would further set an abbreviated schedule of briefing and argument in order that an appropriate decision could be made with regard to the placement of CI-30 on the 1988 primary election ballot.
MR. JUSTICE GULBRANDSON concurs in the foregoing dissent.