**Bob KEDERICK, Plaintiff,**

v.

**B. F. HEINTZLEMAN, Governor of the Territory of Alaska, et al., Defendants,**

**Hadley Stephens, Intervenor,**

**Maurice T. Johnson, Intervenor.**

**Civ. No. A–10964.**

District Court, Alaska
Third Division, Anchorage.
June 24, 1955.

John E. Manders, Anchorage, Alaska, for plaintiff and intervenors.

Raymond E. Plummer (of Plummer & Biss), Anchorage, Alaska, for Burke Riley, defendant.

J. Gerald Williams, Atty. Gen. for the Territory of Alaska, for the territorial agencies.

McCARREY, District Judge.

This is an action to restrain the governor and others, named as defendants herein, from certifying one Burke Riley as a candidate to the Territorial Constitutional Convention, and to enter an order disqualifying all members of the Twenty-second Legislature of the Territory of Alaska to serve as members of the Constitutional Convention. This action was initially instituted by one Bob

Kederick, who sues as a candidate for said convention, and as a citizen. Separate motions for leave to intervene were filed by one Hadley Stephens and one Maurice Johnson, on the grounds that they stand in a similar position to that of the plaintiff, Bob Kederick, herein. Counsel for the defendant was given leave to file objections to said motions, and failed to so do. The motions to intervene are hereby granted.

The determination of this case turns upon section 11 of our Organic Act, 1 A.C.L.A.1949, 57; 37 Stat. 512, section 11, which provides "That no member of the legislature shall hold or be appointed to any office which has been created, or the salary or emoluments of which have been increased, while he was a member, during the term for which he was elected and for one year after the expiration of such term; and no person holding a commission or appointment under the United States shall be a member of the legislature or shall hold any office under the government of said territory."

Plaintiff contends that the prohibition against holding applies also to being elected and, thus, the defendant, Burke Riley, cannot be placed on the ballot. Defendant Riley contends that the word "hold" prohibits only his occupancy of the office, and does not prohibit him from being elected to the office. The defendant Riley further contends that Congress may pass enabling legislation to amend section 11 of the Organic Act and cites legislation which is now pending before it.

This case then must turn on the construction given the word "hold" as used in the Organic Act. This term has not been construed by any other courts in Alaska, thus, it appears to be a case of first impression.

Concise definition of the word "hold" has been difficult to find. Concerning the word "hold" as a verb, the general statement is made in 40 C.J.S. p. 406 that "It has been said that there are innumerable legal definitions of the word and that obviously its meaning depends on the context or its relation to other parts of the whole instrument in which it is used". Black's Law Dictionary defines "hold" as to possess; to control; to direct the operations of; to keep. It is plain to see that a strict definition of the term will not suffice in this matter, as the problem is not one of definition but one of construction. Counsel for the plaintiff has cited one federal case. Many decisions have been cited by the parties herein, concerning the construction of the word "hold" and words of like nature, decided by appellate courts of the several states. While these decisions are in no way binding on this court, they are indeed helpful in arriving at a definition of the term, and providing reasons therefor.

Counsel for the defendant has referred the court to 88 A.L.R. 826, an annotation which states, generally, that a prohibition against holding does not prohibit election. The cases cited therein do not purport to be an exhaustive annotation on the matter, and are of jurisdictions of the eastern portion of the United States. These cases seem to rest on a strict construction of the word "hold", and do not consider the intent and purpose of the provision as a whole.

In addition, we must distinguish the physical makeup of the states, from which the state decisions cited by counsel for the defendant were taken, from the geographical construction here in the Territory of Alaska. In the Territory of Alaska, a land mass constituting an area approximately one-sixth the size of the entire forty-eight states, and possessing approximately 27,000 miles of shoreline, makes peculiarly difficult the problems of distribution of ballots, campaigning, communication, and the dissemination of information germane to the election of the candidates. In the past, there have been numerous communities which, because of their remoteness, transportation costs and sparse populations, have not been visited by candidates. Likewise, only the larger cities and towns have newspapers, radio stations and other means of communica-

tion; hence, the voter cannot keep himself fully informed of the current issues of the election and, certainly, when a candidate's name is on the ballot, the voter has reason to believe that if his candidate receives the highest number of votes that he is qualified to hold office. Thus, due to these circumstances peculiar to our territory, it is incumbent upon this court to consider the practical effect the construction of the term here in question will have on the people of the territory.

Counsel for the plaintiff in his brief cited the case of Padron v. People of Puerto Rico ex rel. Castro, 1 Cir., 142 F. 2d 508, 509. In that case, the court had before it a portion of the Organic Act of Puerto Rico, which provided that "no senator or representative * * * shall, during his term of office, be appointed to any civil office under the Government of Puerto Rico", 39 Stat. 959 as amended in 52 Stat. 595, 48 U.S.C.A. § 819. Admittedly, the word "appointed" may be distinguished from the word "hold" in our Organic Act. However, as the court pointed out in the Padron case, citing a Senate committee report, to the effect that " 'the above provision, recommended by this committee, as an amendment to the bill, is designed to remove from the thoughts of the legislators any expectation of reward or personal advantage in the enactment of legislation. A similar provision is found in most of our State constitutions and it has a wholesome effect' ". The court also referred to and adopted as its own the language of the California court in Satterwhite v. Garrison, 34 Cal.App. 734, 168 P. 1053, 1054, where the California court held that the intention of the prohibition was to preclude " 'members of the law-making branch of the state government from seeking or holding any appointive office or employment in or under any department or subdivision of the general state government, by the seeking or holding of which his independent action as such member of the Legislature might be in anywise influenced or affected' ".

Counsel for the plaintiff herein has, in addition, cited to the court the case of Fyfe v. Kent County Clerk, 149 Mich. 349, 112 N.W. 725, where the prohibition was against receiving any civil appointment by a legislator during his term of office. The county clerk refused to place the relator's name on the ballot, for the reason that the relator was a legislator. The court, in denying the relator's petition for writ of mandamus, cited as the reason for its decision an earlier case, Ellis v. Lennon, 86 Mich. 468, 49 N.W. 308, and stated the following [149 Mich. 349, 112 N.W. 726]: " 'to prevent officers from using their official position in the creation of offices for themselves or for the appointment of themselves to place' ". The court in the Fyfe case also stated that the purpose of this provision is to " 'preserve a pure public policy' ". In the case of State ex rel. Pennick v. Hall, 26 Wash.2d 172, 173 P.2d 153, though the provision was substantially different from the one before the court herein, the court stated reasons for its decision, which are equally applicable to the case at bar. The prohibition in the Pennick case prohibited appointment or election. The court cited Judge Story's work on the Constitution as reason for the rule against the legislator being appointed or elected to an office which was created during his term of office, as follows: "The reasons for excluding persons from office who have been concerned in creating them, or in increasing their emoluments, are to take away as far as possible any improper bias in the vote of the representative, and to secure to the constituents some solemn pledge of disinterestedness" (Story's Com. on Const. 864).

In the case of State ex rel. Jugler v. Grover, 102 Utah 41, 125 P.2d 807, 819, the court had before it the provision of the state constitution of the State of Utah, article 6, section 7, which read as follows: " 'No member of the Legislature, during the term for which he was elected, shall be appointed or elected to any civil office * * *' ". While it is clear that the provision is substantially

different from the one before the court herein, the purpose of the provision is clear and identical with the provision of our Organic Act. The court in the Jugler case refers to some remarks made by constitutional convention delegates, concerning an amendment to the constitution of the State of Massachusetts. From the remarks of a Mr. Aylward, the following appears: "I have paid very little heed to the arguments by the gentlemen in the second division (Mr. Curtiss of Hingham) that sometimes some expert is in the legislature who for some reason is eminently desirable to fill a position on one of these commissions. It is much more desirable that the legislators always should have in mind that no act of theirs in any event shall promote them to a commission, and that we will have a situation which will be such that their actions will not be controlled by the inducement that probably in the future they may be able to benefit themselves".

I feel that these reasons are equally applicable to the case at bar. The purpose of the prohibition is to eliminate, as far as possible, any hope in the mind of the legislator, that the office so created may be filled by himself, and to insure to the people independent judgment of their representatives. It is necessary to good government that legislators exercise their judgment free from selfish motives and, to this end, these prohibitions have been placed in constitutions and on statute books. If the territorial legislature can create an office and rely on the possibility of Congress lifting the prohibition between the time of the election and the time to hold the office, then it cannot be said that the possibility of bias has been limited to the greatest possible extent.

As an added reason for prohibiting one from seeking election when he cannot hold the position if elected, is that the will of the people expressed in the election may thereby be frustrated. Section 12 of chapter 46, 1955 Session Laws provided that the candidate receiving the largest number of votes shall be deemed elected. Section 9 of chapter 46, supra, provided that, in the event of a disqualification of the person who receives the most votes, the person receiving the next highest number of votes shall fill the vacancy. The defendant concedes, if Congress fails to enact enabling legislation prior to September 13, 1955, any member of the Twenty-second Legislature could not hold the office of delegate, even if he received the greatest number of votes. Thus, the people who cast their ballot for him would, in effect, be deprived of their choice of representative, for there is the possibility that a lesser-qualified candidate might be elected than would be possible if the legislator had not been allowed to be a candidate.

I, therefore, find that unless Congress passes enabling legislation, amending section 11 of the Organic Act, prior to July 13, 1955, that the word "hold" as appears in section 11 of the Organic Act, prohibits members of the Twenty-second Legislature of the Territory of Alaska from becoming candidates on the official ballot for the selection of delegates to the Territorial Constitutional Convention to be held on September 13, 1955.

Findings of fact, conclusions of law, and judgment, in accordance herewith, may be presented by counsel for plaintiff.