CHARLES H. MAHONEY, Relator, *v.* FRANK MURRAY, Secretary of State, State of Montana, Respondent.

No. 12255.
Decided April 21, 1972.
496 P.2d 1120.

Philip W. Strope (argued), Helena, Robert L. Woodahl, Atty. Gen., John C. Connor, Asst. Atty. Gen., Helena, Lawrence D. Huss, Asst. Atty. Gen. (argued), Helena, for appellant.

John Risken (argued), Helena, for respondent.

Wesley Wertz (argued), Helena, amicus curiae.

Mr. JUSTICE CASTLES delivered the Opinion of the Court.

This is an original proceeding seeking a writ of mandamus directing the Secretary of State to receive and file a declaration of nomination for public office, that of State Treasurer, by the relator. On ex parte application, this Court issued its order of April 3, 1972, accepting jurisdiction, ordering the Attorney General to be joined as a relator, and setting the matter for hearing on April 7, 1972.

Relator Charles H. Mahoney is a resident citizen of Jefferson County, Montana, and a qualified elector. Relator was elected on November 2, 1971, from District 12, comprising Jefferson, Broadwater and Lewis & Clark counties, as a member of the Constitutional Convention. Relator was elected as an Independent candidate.

The Constitutional Convention was called by the Forty-second Legislative Assembly, Chapter 296, Laws of Montana

1971, as amended by Chapter 1 of the First Extraordinary Session of the Forty-second Legislative Assembly. The amendments came about as a result of the case "The Forty-second Legislative Assembly of the State of Montana, and Frank Murray, Secretary of State of the State of Montana v. Joseph L. Lennon, Clerk and Recorder of Cascade County, Montana", reported in 156 Mont. 416, 481 P.2d 330, and hereinafter referred to as the Lennon case.

The Convention assembled, and its members were sworn with Relator Mahoney a member, in an organizational meeting on November 29, 1971. Thereafter, the Convention assembled again in plenary session on January 17, 1972. It continued to meet until noon on March 24, 1972, when, after motion made and carried, it "adjourned sine die".

Respondent Frank Murray is Secretary of State whose duties are set forth in Art. VII, Sec. 1, of the Montana Constitution, and in section 82-2201 et seq., R.C.M.1947. These duties include the filing of declarations of nomination for public office. Respondent Frank Murray is the same public officer who as a party sought declaratory judgment in the *Lennon* case.

Robert L. Woodahl, Attorney General of Montana, because of the constitutional issues involved, was ordered joined as a relator. Attorney General Woodahl, on January 28, 1972, had, in response to a request by the President of the Convention, issued an opinion appearing in Volume No. 34 of Attorney General's Opinions as Opinion No. 34, in regard to the eligibility of members of the Convention to become political candidates in the year 1972. Briefly, and we acknowledge before any facts concerning adjournment, election dates for Convention proposals, completion of work, or anything else, the opinion stated that members could, after adjournment sine die, serve in any public office. Because that opinion was rendered, it appeared the Attorney General should also be a relator.

Five days after the previously mentioned "adjournment sine die", Relator Mahoney attempted to file his declaration of

nomination and filing fee for the office of State Treasurer. The Secretary of State refused to accept the filing and advised Relator Mahoney that his filing was refused as he was a duly elected member or delegate of the Constitutional Convention, "* * * since the Montana Supreme Court in [the Lennon case] appears to hold that a Member of the Constitutional Convention is a public officer coming within the Constitutional provisions prohibiting public officers from simultaneously holding more than one public office."

Following this occurrence, the present action was commenced by Relator Mahoney.

This Court accepted original jurisdiction, at least in part, due to the fact that the filing date for candidates for nomination for election to public office expires on April 27, 1972, and in fairness to all, time is short.

Respondent Murray appeared by answer. The answer set up three defenses, essentially (1) that there was no claim for relief stated; (2) that the purported "adjournment sine die" was not an adjournment in the sense of a "termination" in that the Convention adopted its Resolution No. 14 which perpetuates the Convention for an indefinite time in the future by creating a committee with full authority to manage and conclude all of the Convention's procedural, administrative, and voter education affairs, and to spend funds of the Convention whether appropriated by the legislature, received from federal funds or otherwise; and (3) that Relator Mahoney is prohibited from holding two civil offices by Art. V, Sec. 7, of the Montana Constitution and this Court's decision in *Lennon*.

Oral argument was had with argument by counsel for Relator Mahoney, Relator Woodahl, Respondent Murray and by Amicus Curiae Wesley W. Wertz.

The petition of Relator Mahoney seeks a writ of mandamus and a reasonable attorney fee. The answer and brief of Respondent Murray would challenge the remedy of mandamus as being an improper remedy in any event. We need not dwell

here on the appropriateness of the remedy. Whether mandamus would be an available and proper remedy would depend on whether Relator Mahoney is qualified to file for public office, notwithstanding the refusal of Respondent Murray. The basic question, therefore, is whether at the time of attempting to file for office Relator Mahoney was still a delegate and one who does presently "hold any public office" within the meaning of this Court's opinion in *Lennon*. Putting the first part of the basic question another way, does a delegate have a term of office?

Hereinafter all references to Articles shall be to the Constitution of Montana. Chapter 1 of the First Extraordinary Session, Vol. II, Laws of Montana 1971, amending Chapter 296, Laws of Montana 1971, shall be referred to herein as the Enabling Act.

Art. XIX, Sec. 8, provides:

"The legislative assembly may at any time, by a vote of two-thirds of the members elected to each house, submit to the electors of the state the question whether there shall be a convention to revise, alter, or amend this constitution; and if a majority of those voting on the question shall declare in favor of such convention, the legislative assembly shall at its next session provide for the calling thereof. The number of members of the convention shall be the same as that of the house of representatives, and they shall be elected in the same manner, at the same places, and in the same districts. The legislative assembly shall in the act calling the convention designate the day, hour and place of its meeting, fix the pay of its members and officers, and provide for the payment of the same, together with the necessary expenses of the convention. Before proceeding, the members shall take an oath to support the constitution of the United States and of the state of Montana, and to faithfully discharge their duties as members of the convention. The qualifications of members shall be the same as of the members of the senate, and vacan-

cies occurring shall be filled in the manner provided for filling vacancies in the legislative assembly. Said convention shall meet within three months after such election and prepare such revisions, alterations or amendments to the constitution as may be deemed necessary, which shall be submitted to the electors for their ratification or rejection at an election appointed by the convention for that purpose, not less than two nor more than six months after the adjournment thereof; and unless so submitted and approved by a majority of the electors voting at the election, no such revision, alteration or amendment shall take effect."

Art. V, Sec. 7 provides:

"No senator or representative shall, during the term for which he shall have been elected, be appointed to any civil office under the state; and no member of congress, or other persons holding an office (except notary public, or in the militia) under the United States or this state, shall be a member of either house during his continuance in office."

Art. VII, Sec. 4, referring to state offices of governor, secretary of state, attorney general, treasurer, auditor, superintendent of public instruction and lieutenant-governor, states in part:

"* * * No officer mentioned in this section shall be eligible to, or hold any other public office, except member of the state board of education during his term of office."

Art. VIII, Sec. 35, prohibits justices of the supreme court and judges from holding other public office while he remains in office.

In the Enabling Act it is provided, in Section 2, that the number of delegates shall be the same as provided for the election of members of the house of representatives and Section 3 provides that the qualifications of delegates shall be the same as that of members of the state senate.

Section 4(1) states:

"Delegates to the constitutional convention shall be elected

in the same manner as members of the house of representatives
* * *."

Section 5 requires the constitutional oath of office required by Art. XIX, Sec. 1. Section 6 provides for vacancies to be filled in the same manner as for legislative vacancies.

Section 7(6) states:

"It shall be the duty of the delegates elected to assemble in plenary session in the chambers of the house of representatives in the state capitol building in the city of Helena, at 10:00 a.m. on January 17, 1972. The convention, which may recess from time to time, shall then remain in session as long as necessary."

Section 16 refers to pay and expenses as the same as legislators and in subs. (4) refers to "officers and employees of the state and its political subdivisions who *are not prohibited by the Montana Constitution or Laws of Montana* from serving as delegates * * *."

Section 21 provides for appropriations for the biennium ending June 30, 1973. Section 24 provides for repeal of the Enabling Act on June 30, 1973.

Relator Mahoney contends that his "term" expired on adjournment sine die on March 24, 1972. Respondent Murray contends the term is for two years, the same as that of a representative, beginning January 17, 1972 and ending January 17, 1974. Respondent Murray's position is essentially correct since the term continues to run until the repeal of the Enabling Act on June 30, 1973.

Referring now to the Enabling Act, the Legislature's intent seems clear. Delegates were elected for a term ending on repeal of the act; funds were provided until repeal of the act; the convention could remain in session "as long as necessary" subject to the repealer clause; its duties continued through submission of its proposals to the people at an election to be held after "adjournment" within a specified time as specified in Art. XIX, Sec. 8; its members or delegates were

to be paid and treated in all other respects in the same manner as legislators, particularly as house of representative members.

In *Lennon* at page 422 of 156 Mont., at page 333 of 481 P.2d this Court said:

"Directing our attention to the first issue before us for determination, we find that it contains two questions which we answer as follows:

"Any state and local officers who are prohibited by the constitution or laws of Montana from holding more than one office may not serve as delegates to the constitutional convention. A delegate to the constitutional convention is a 'state officer' holding a public office of a civil nature.

\*    \*    \*    \*    \*    \*    \*    \*

"These restrictions prevent such officers from holding any other 'public office' or 'civil office' of the state, these two terms are synonymous. State ex rel. Barney v. Hawkins, 79 Mont. 506, 257 P. 411.   \*   \*   \*"

This Court went on to say:

"In our view delegates to a constitutional convention also 'possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public' satisfying requirement (2) of *Barney*. Plaintiffs and relators argue that this requirement is not satisfied, drawing a distinction between officers of the executive, legislative and judicial branches of the *state government* and delegates to a constitutional convention who act as agents of the *people* occupying no position in any recognized branch of state government. Our attention has been directed to several cases from other states upholding such distinction under their particular state history and the particular provisions of their state constitutions. These cases are not persuasive as applied to the present controversy in Montana, being distinguishable on the basis of such factors as historical considerations peculiar to such state, legislative precedent, existing rather than proposed legislation, inherent legislative powers to call a constitutional convention, different

constitutional provisions, and dissimilar issues presented for decision [citing cases] * * *.

"A delegate to the constitutional convention exercises sovereign powers of a legislative character of the highest order. That the final product of such legislative authority is subject to referendum, renders it no less an exercise of sovereign power. The delegation of unlimited power is not essential to the exercise of sovereign power. To draw a distinction between other state officers and delegates to a constitutional convention, both of whom act as agents of the people exercising sovereign powers in their behalf, is to deny our basic concept of government."

"The purpose of the Montana constitutional restrictions against certain officers serving as delegates to a constitutional convention is readily apparent. It is to insure independent consideration by the delegates of the provisions of the new constitution, to reduce concentration of political power at the constitutional convention by eliminating as delegates incumbent office holders, and to foreclose the possibility of such officers creating new offices for themselves or increasing the salaries or compensation of their own offices. See Kederick v. Heintzleman, D.C., 132 F.Supp. 582, 15 Alaska 582, for the expression of similar principles in prohibiting a state senator from filing for the position of delegate to the Alaskan constitutional convention. These considerations cannot be given effect unless a delegate to the constitutional convention holds a 'public office' thereby placing him within the ambit of constitutional prohibitions.

"Requirement (5) of *Barry* that an office must have some permanency and continuity and not be only temporary or occasional in order to constitute a 'public office' is satisfied in the case of a delegate to the constitutional convention. This requirement is a relative matter and must be interpreted in the light of the purposes for which the position was created. A delegate to the constitutional convention holds his position for the entire period of time the constitutional convention is

*in session.* His position is permanent and continuous in the sense that it continuously exists until the duties for which it was created have been completed. It is not temporary or occasional in that it is a full time position for the length of time required for completion of the convention's work. While it is true that constitutional conventions are called but seldom, when a particular constitutional convention is called the delegates are elected for that particular constitutional convention alone and the convention possesses permanency and continuity until its purpose is completed; there is nothing temporary or occasional in the work of its delegates while the convention is in session and carrying out its duties. Contemporary experience notwithstanding, a public position need not be conceived and created in perpetuity in order to qualify as a public office." (Emphasis supplied.)

The foregoing italicized words [while] *in session,* are the words that Relator Mahoney stresses on his contention that adjournment sine die ends his status or position. However, that connotation cannot be placed on the meaning of the two words "in session" as used in *Lennon.* There the Court did not have before it the situation we have now. Rather, we have almost the reverse. The same purposes of the constitutional prohibitory language referred to above apply equally to Constitution Convention members. While we recognize that there may be some argument made that a state treasurer does not have policy making functions, yet the same purposes of the prohibitions apply to all constitutional officers. By our analysis of the Enabling Act, the Constitutional Articles pertinent, and our language in *Lennon,* we find the prohibitions applicable.

We also find by the language and analysis that the "term" of the prohibition goes on to the repeal of the Enabling Act. Again, we give recognition to overall intent of the legislature to treating the members of the Convention as Legislators. The Enabling Act was drafted and enacted with *Lennon* and

its language as the declaratory judgment guide that it was.

So far we have discussed the basic question in the light of the Enabling Act, the Constitution, and the *Lennon* judgment in the main. Now, we look to the Convention's actions. We referred before to the motion made and carried that the Convention "adjourned sine die". Amicus curiae argues that, previously quoted Art. XIX, Sec. 8, provision setting the limits of an election for submission of proposals to the people, requires by its language an "adjournment" with a finality or termination of all functions, or that it becomes functus officio, before an election can be held on June 6, 1972. It seems plain to us that an adjournment referred to in Art. XIX, Sec. 8, need not have that finality with respect to all functions, but only with respect to finality of the revisions, alterations or amendments to the constitution to be submitted to the electorate.

At any rate, the Convention, on March 16, 1972, passed its Resolution No. 14 which, among all of the other proceedings of the Convention, is a matter of record in Respondent Murray's office. Respondent Murray does not question the validity or legality of Resolution No. 14.

Resolution No. 14 is as follows:

"WHEREAS, the Montana Constitutional Convention has nearly completed its substantive activities and is making arrangements for adjournment sine die in order to meet its election date commitment of June 6, 1972; and

"WHEREAS, prior to adjournment sine die the Convention will not be able to complete its procedural, administrative and voter education affairs, all of which must be concluded in an orderly and responsible manner; and

"WHEREAS, the Convention anticipates that it will need to establish an appropriate committee to manage and conclude all of its procedural, administrative and voter education affairs after adjournment sine die;

"NOW, THEREFORE, IT IS RESOLVED BY THE CON-

STITUTIONAL CONVENTION OF THE STATE OF MONTANA AS FOLLOWS:

"1. The Convention hereby creates a committee to act with the President of the Convention on its behalf after adjournment sine die, delegating to it full authority to manage and conclude all of the Convention's procedural, administrative and voter education affairs, and to spend the Convention's funds therefore, but only within the limits of its appropriation and such other funds as the Convention may have.

"2. The Convention hereby appoints to said committee the President, Leo Graybill, Jr., who shall act as its chairman, and the following delegates: John Toole, Dorothy Eck, Bruce Brown, Jean Bowman, Margaret Warden, Fred Martin, Robert Vermillion, Katie Payne, Betty Babcock, Marshall Murray, Catherine Pemberton, John Schiltz, Thomas Joyce, George Harper, Bill Burkhardt, Jerome Loendorf, Oscar Anderson, Gene Harbaugh.

"3. No delegate may serve on the committee who shall seek public office in the primary election to be held on June 6, 1972. The President, as chairman of the committee, shall have authority to substitute other Convention delegates for any committee members named herein who may decide to seek public office.

"4. The Convention hereby delegates authority to the committee to receive, disburse and account for all Federal funds which the Convention may receive.

"5. The Convention also delegates authority to the committee to supervise and edit any and all voter education materials prepared on behalf of the Convention or by other persons relative to the work of the Convention.

"6. The committee shall terminate its work at such time as all of the Convention's procedural, administrative and educational affairs have been completed, and all requirements of the Enabling Act have been met."

In the Resolution the Convention states that it will not be

able to complete its procedural, administrative or voter education affairs and it is necessary to create a Committee. From a reading of Section 1, it is obvious that the Convention continues to exist. The Committee acts on behalf of the Convention, in its place and stead. It carries on until the procedural, administrative and voter education affairs are concluded, and the money appropriated to it has been spent. These particular items of business are substantial parts of the business of the Committee and the Convention. It would appear that the only thing that the Committee cannot do that the Convention did is propose further constitutional provisions or change or modify those proposed. Other than that, the Committee has all of the power of the Convention. This is the way that Respondent Murray interpreted the Resolution.

Anticipating that a delegate might wish to seek a public office, the Convention adopted Section 3 of Resolution 14.

It is agreed that Mahoney was not a member of the Committee appointed by this Resolution, but it is of interest to note that the Convention anticipated that some of its members might desire to go on to other public office, in spite of the fact that the business of the Convention was not finished. Not only did the Convention perpetuate itself, but it opened the door for members who aspired to other offices.

The Committee, in Section 4, has carte blanche authority as to the money, Federal or that left over from the Convention. We can see no difference in what the Convention was doing before March 24, 1972, and what the Committee was authorized to do, other than making proposals for inclusion in the new constitution. The final provision of Resolution 14, Section 6, states:

"The committee shall terminate its work at such time as all of the Convention's procedural, administrative and educational affairs have been completed, *and all requirements of the Enabling Act have been met.*" (Emphasis supplied.)

We emphasize here that we are not concerned in this case

about the validity and legality of Resolution No. 14. In what we shall refer to as a companion case, State ex rel. Kvaalen v. Graybill, Jr. et al., 159 Mont. 190, 496 P.2d 1127, the validity of Resolution No. 14 is an issue.

For this additional reason, the contents of Resolution No. 14, Relator Mahoney's status as a delegate is continuing whether he, as an individual, has any duties or not. The fact is that the Convention, of which he is a member, still is in existence, albeit adjourned.

Accordingly, we find that Relator Mahoney now holds a public office, and he is prohibited by the Constitution from holding another public office. His term has not expired, and he continues to be a delegate to the Convention. Respondent Murray was correct in refusing to file the declaration for nomination, and the petition for a writ of mandamus is denied.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, JOHN C. HARRISON, and DALY concur.