No. 12918

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

THE STATE OF MONTANA on the relation of
ROBERT L. WOODAHL, Attorney General of the
State of Montana,

Relator,

-vs-

THE DISTRICT COURT OF THE FIRST JUDICIAL
DISTRICT OF THE STATE OF MONTANA, in and
for the County of Lewis and Clark, and the
Honorable Gordon R. Bennett and Peter G.
Meloy, Judges thereof,

Respondents.

---

ORIGINAL PROCEEDING:

For Relator:

Hon. Robert L. Woodahl, Attorney General,
appeared, Helena, Montana
Richard Dzivi, Special Assistant Attorney General,
argued, Great Falls, Montana
Donald N. Eastman, Special Assistant Attorney General,
argued, Helena, Montana

For Respondents:

Roland V. Colgrove argued, Miles City, Montana

---

Submitted: December 16, 1974

Decided: JAN - 7 1975

Filed: JAN - 7 1975

Thomas J. Kearney
Clerk

PER CURIAM:

This is an application for a writ of supervisory control directed to the district court of the first judicial district, Lewis and Clark County, and to the two judges thereof, the Honorable Gordon R. Bennett and the Honorable Peter G. Meloy. The application is by the Attorney General and is with respect to that court's denial of the attorney general's formal request that a grand jury be empaneled to inquire into matters related to the Workmen's Compensation Division, Department of Labor and Industry, Cause #38354 in the district court.

This Court, on ex parte application, issued an order calling for an adversary hearing wherein counsel for relator attorney general and respondent district judges could appear in oral argument. Such oral argument was heard on December 16, 1974.

The background giving rise to this application, as recited therein, is:

In 1967 the state legislature enacted "The Legislative Audit Act" (Chapter 23, Title 79, R.C.M. 1947) and provided for a bipartisan audit committee with the obligation to appoint an auditor whose duty it was to make audits of "every state agency at least once each biennium." (Section 79-2308, R.C.M. 1947.) Section 79-2308 further provided in subsection (3) that said auditor was to:

> "Report immediately in writing to the attorney general any apparent violation of penal statutes disclosed by the audit of a state agency and furnish the attorney general all information in his possession relative to the violation."

In 1973 an audit was performed by the legislative auditor of the accounts and operations of the Workmen's Compensation Division, Department of Labor and Industry. The audit of hundreds of industry related injury claims revealed evidence that widespread criminal activity was occurring and had occurred in

Workmen's Compensation Division related matters. These alleged criminal irregularities were thereafter reported and referred by the bipartisan audit committee for the attorney general as required by section 79-2308, R.C.M. 1947.

In 1974, the Montana Legislature enacted section 79-2315, R.C.M. 1947, which provides:

> "The attorney general shall conduct on behalf of the state, all prosecutions for public offenses disclosed by an audit of a state agency performed by the legislative auditor. If the attorney general shall decline such prosecution or shall fail to commence action on a public offense within a reasonable time the county attorney of the appropriate county shall conduct on behalf of the state such prosecution."

The attorney general assumed the duties and responsibilities imposed upon his office by this new legislation and commenced to investigate, prepare and prosecute the apparent criminal violations in workmen's compensation related matters.

As of the date of this application five criminal prosecutions have been initiated by the attorney general and his staff: State v. McKeon, Cause number 3868, Lewis and Clark County; State v. L. R. Bretz and Gloria Eusek Carden, Cause number 6537 B, Cascade County; State v. Frank Preite, Cause number 2724, Hill County; State v. Thomas Powers, Cause number 2814, Deer Lodge County; State v. Merril Cline, L. R. Bretz and Shirley (Lankford) Cline, Cause number 3921, Lewis and Clark County. Through constant review of the fruits of the ongoing audit and during the prosecution of the above-entitled matters and other investigations, much evidence has been uncovered demonstrating that public officers and/or employees, past or present, most of whom have or had their official business offices in Helena, acted in collusion with private persons such as attorneys, doctors, runners, etc., in the commission of public offenses against the state of Montana,

- 3 -

the Industrial Accident Board, now the Workmen's Compensation Division (hereinafter referred to as "IAB/WCD") thereof, and industrial accident victims who were claimants in the IAB/WCD cases audited by the legislative auditor.

Additionally, it is alleged that there are strong indications that certain persons are definitely involved; that other individuals are probably involved; and that still other individuals are possibly involved. The investigation led the attorney general and his staff into private and public sectors; persons connected therewith resisted and refused the requests and demands of the attorney general and his staff to reveal and disclose material facts and evidence relating to this investigation. It was therefore determined by the attorney general that a grand jury must be empaneled to call and command reluctant witnesses to appear and produce evidence so that the responsible individuals can be prosecuted and to exonerate those individuals who are suspected of committing criminal offenses but who have not done so, according to the evidence, or where evidence is inadequate to merit initiation of criminal proceedings.

On October 18, 1974, a petition was filed with respondents herein asking that a grand jury be promptly empaneled in Lewis and Clark County, state of Montana:

> " * * * for the purpose of inquiring into public
> criminal offenses, committed or triable in Lewis
> and Clark County which relate to Workmen's Comp-
> ensation Division matters; and also, for the pur-
> pose of inquiring into allegations of willful
> and corrupt misconduct in office by public offi-
> cers within the county of Lewis and Clark, which
> relate to Workmen's Compensation Division matters."

After studying the matter for six weeks, the attorney general's request for the empaneling of a grand jury was denied on November 27, 1974, by respondent Judges Gordon R. Bennett and Peter G. Meloy. Respondent district judges based their decision on several premises, all of which purport to support the

- 4 -

contention that a grand jury is not necessary. The order

denying the request states:

> "We have before us the Petition of the Attorney
> General for the summoning of a grand jury under
> the provisions of 95-1401, R.C.M. 1947. That
> statute, and the 1972 Constitution, Article II,
> Section 20, as well as the 1889 Constitution,
> Article III, Section 8, provides that a grand
> jury may be drawn and summoned only at the dis-
> cretion of the Court. That statute specifies
> that this discretion be exercised only when the
> Court finds a grand jury 'necessary.' It is
> therefore the necessity for a grand jury that
> must be of paramount concern in considering the
> Petition.
>
> "In Montana, indictment by grand jury has been
> replaced, in practice, almost entirely by the
> direct filing of an information. The reason
> was best stated by Chief Justice Brantley of the
> Montana Supreme Court sixty years ago. Referring
> to prosecution by information as authorized by
> the 1889 Constitution he said:
>
> "'One of the purposes of the convention in
> formulating it, and the people in adopting it,
> was to dispense with the slow, expensive, and
> therefore unsatisfactory procedure by indict-
> ment, and to substitute a procedure expeditious
> and inexpensive, to be availed of by the prosecu-
> ting officers at their discretion, subject to
> control by the court, to guard a particular de-
> fendant against oppression and malice, and pre-
> vent abuse of power by the county attorney.'
> State v. Vinn, 50 Mont. 27, 34.
>
> "The question becomes, then, what necessity
> justifies the extra expenditure of time and money
> that would undoubtedly be occasioned by the call-
> ing of a grand jury to consider the matters
> referred to in the Petition.
>
> "We believe that the most compelling reason for
> calling a grand jury would be the failure of
> those charged with prosecution to carry out that
> responsibility. No such reason appears in the
> Petition or in the circumstances as we under-
> stand them. The Petition itself is replete
> with declarations that the prosecution assigned
> to the Attorney General by the legislature
> (Ch. 4, L. 1974) is not failing and will be
> diligently, even 'ruthlessly', pursued if no
> jury is impaneled. Prosecutions have begun in
> four counties, Cascade, Hill, Lewis & Clark and
> Deer Lodge. One conviction by plea has been
> obtained. An investigative and prosecutorial
> staff has been assembled and is operating
> throughout the state. We are further assured
> by the same act that if the Attorney General

declines or fails to prosecute within a reasonable time the appropriate county attorney may conduct the prosecution.

"The Petition suggests that prosecution may be or is fettered by lack of subpoena power. We find no such detriment. The legislature has chosen to make the Attorney General its special agent for the prosecution of 'public offenses disclosed by an audit of a state agency performed by the legislative auditor.' (Ch. 4, L. 1974). In discharging this extraordinary and peculiar function the Attorney General may draw on the subpoena power of the legislature. The Legislative Council has subpoena power (Sect. 43-713, R.C.M. 1947), as does the Legislative Fiscal Review Committee (Sect. 43-1105, R.C.M. 1947). Full access to all state government records and the records of all those receiving state government grants is provided the Legislative Auditor (Sects. 79-2314 and 79-2310(7), R.C.M. 1947). In addition, the Attorney General has full statutory powers to subpoena witnesses and require them to testify under oath, as well as compel the production of documents (Sect. 95-1801 and 95-1802, R.C.M. 1947), even from out of state (Sect. 94-9001 et seq.).

"It is suggested that a grand jury is necessary to 'sift' the mass of evidence uncovered and to be uncovered in the Workmen's Compensation Division investigation. These matters have been under investigation by the Department of Administration, the Legislative Audit Committee and the Attorney General's office for more than a year and a half. We have been informed by the Attorney General in the press and in his Petition that these matters are technical, complex, widely ramified, involve large numbers of people and voluminous documentation and are vast in scope. The information has been developed and evaluated by experts. We see no necessity or purpose to be served by having it sifted and evaluated by eleven people summoned from ordinary walks of life with little or no familiarity with the subject matter. On the contrary, the process would impede the prosecution rather than expedite it.

"The grand jury, as constituted by statutes of Montana, is a local county function designed to deal with affairs within the county. We find in the statutes authorizing a grand jury no intention to use a grand jury to deal with statewide affairs. The matters assigned by the legislature to the Attorney General for investigation and prosecution are clearly not local county matters but are legislatively recognized statewide matters.

"We find that it is not necessary to impose upon the people of Lewis and Clark County this extraordinary burden. The investigation and prosecution

are already financed by an appropriation of the state legislature to the Attorney General in the amount of $183,191.00, in addition to the funding provided the Legislative Auditor. The Attorney General has all of the necessary legal tools to pursue, as he has, any criminal matters disclosed by the Workmen's Compensation audit.

"The Petition is denied."

There is no statutory means provided for appealing to this Court from the adverse decision of the respondent district court. However, when the facts clearly show that a party has no plain, speedy or adequate remedy at law, and when there is no right of appeal from a district court's order, a writ of supervisory control may issue so that the decision of the lower court may be reviewed by the Montana Supreme Court. State ex rel. Woodahl v. District Court, 159 Mont. 112, 495 P.2d 182(1972); Art VII, Sec. 2, 1972 Constitution of Montana.

In State v. Superior Court in and for County of Pima, 4 Ariz.App. 562, 422 P.2d 393, the Arizona court reviewed the discretionary act of one superior court judge empaneling and dismissing a grand jury after the grand jury had been called by another judge. The Arizona Court held that it had the power to review discretionary acts of the judge and reversed. Citing Pennsylvania authority, the court stated clearly that discretion of a lower court pertaining to a grand jury is subject to appellate review as to abuse of that discretion.

This Court on previous occasions has reviewed and checked the district court's discretionary functions by means of supervisory control and has found an abuse of discretion sufficient to invoke the supervisory control of this Court. State ex rel. John C. Harrison v. Dist. Ct. of First Judicial District, 135 Mont. 365, 340 P.2d 544 (1959); State ex rel. Thomas J. Hanrahan v. Dist. Ct. of the First Judicial District, 145 Mont. 501, 401 P.2d 770 (1965).

The 1972 Montana Constitution, Art. II, Sec. 20(2), provides that district judges may empanel a grand jury:

"A grand jury shall consist of eleven persons, of whom eight must concur to find an indictment. A grand jury shall be drawn and summoned only at the discretion and order of the district judge."

Statutory provisions relating to grand juries reiterate the discretionary aspect of empaneling a grand jury. Section 95-1401, R.C.M. 1947, provides in part:

"A grand jury must only be drawn and summoned when the district judge in his discretion considers a grand jury necessary and shall so order. * * *"

However, although judicial authority is discretionary, this is not an absolute, unbridled discretion.

The question then becomes whether the district judges abused their discretion. In the language of State ex rel. Harrison, supra, and State ex rel. Hanrahan, supra, this Court inquired as to whether there was a manifest abuse of discretion. Since, as previously related, the two judges, after six weeks of deliberation and having before them not only the application reciting much alleged criminal activity, but the files in three criminal cases already filed, carefully expressed their reasons for the denial, an examination of those reasons will be made. Such examination will illuminate whether there has been an abuse of discretion, and whether the reasons given were erroneous as a matter of law.

1.    The attorney general is "diligently" investigating and prosecuting alleged violations. This, in a legal sense, is no reason. The fact remains that the attorney general made the application for a grand jury because of his asserted and confessed inability to get answers, cooperation, and yea--results. To deny the request on this basis would require a prosecutor to plead incompetence in his application for a grand jury. Such a reason

would deny the use of a grand jury to a "diligent" prosecutor. Surely it was not the intent of the legislature, in placing the grand jury chapter in Montana's statutes, to deny a grand jury to a "diligent" prosecutor should the use of this tool of criminal investigation, for other valid reasons, be deemed necessary to enhance the effectiveness of the prosecutor in his investigation and prosecution.

2. The attorney general has "full subpoena powers". The previously quoted order states the attorney general is the legislature's "special agent" and that it is an "extraordinary and peculiar function". We are at a loss to find wherein a constitutional officer under Art. VI, Sec. 4, 1972 Montana Constitution named as the legal officer of the state in the executive branch of government to have the duties and powers provided by law, is either "special" or doing a "peculiar function". Rather, he is the proper officer and doing a proper and necessary duty.

The order also states that he may draw on the subpoena power of the legislature. Indeed! Legislative and executive functions are distinct. No person charged with the exercise of any power properly belonging to the other shall exercise it. Art. III, Sec. 1, 1972 Montana Constitution. The use of legislative subpoena power would be clearly and manifestly erroneous.

The order then states the attorney general has full statutory powers to subpoena under sections 95-1801 and 95-1802, R.C.M. 1947, and even from out of state under sections 94-9001, et seq., R.C.M. 1947.

In 1967 the legislature specifically repealed sections 94-8901 through 94-8909. Section 94-8901, sub. 3, had provided:

> " * * * It [a subpoena] may be signed and
> issued by * * *

"3. The county attorney, for witnesses in the state, in support of an indictment or information, to appear before the court in which it is to be tried; * * *."

In the year 1916, this Court in State ex rel. Wolfe v. Dist. Ct., 52 Mont. 556, 557, 160 P. 346, interpreted that statute to mean:

"It is perfectly obvious that this statute reposes in the county attorney a power which is subject to no restraint, save his own responsibility under the sanction of his official oath, and subpoenas issued by him pursuant to this statute are in para materia with those issued by the clerk. * * *"

That provision was not carried over into the new code of criminal procedure in section 95-1801. Therefore, even if the authority existed for the prosecutor prior to indictment or information, this clearcut provision was specifically repealed. Accordingly, the district court order is manifestly wrong as a matter of law.

Further, section 95-1801(a) provides:

"Upon the request of the prosecuting attorney or the defendant or his attorney, the court or the clerk of the court shall issue subpoenas. The subpoena shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony and produce objects and documents at the time and place specified therein."

From a reading of subsection (a), all of the language, taken together, means that a case must be actually filed. Respondents argue that the words "title [of the cause] if any, of the proceeding, * * *" under subsection (a), indicates a legislative intent to have subpoenas available in other than actual cases. This does not necessarily follow. The point is that it must be issued by a court and is not available to the attorney general or other prosecuting attorneys independent of a court or grand jury.

Looking now to out of state witnesses under sections 94-9001, et seq., it is clear that the language requires more

- 10 -

than just an investigation, it requires a "criminal action, prosecution or proceeding" and an application to a court of record. Accordingly, the reasoning of the district court as a matter of law on the subpoena powers available to the attorney general is in error.

3. <u>The information has been evaluated by "experts" and ordinary citizens would "impede" the investigation rather than "expedite" it.</u> We need only say here that the people, that is ordinary citizens, have reserved to themselves the right of government.

Litigants have long placed their faith in ordinary citizens sitting as a trial jury. So great is this faith in the competency of ordinary citizens that the right to trial by jury has been given constitutional stature. The jury system generally does, in our view, an admirable job in a system of a free society. We cannot and do not accept the thought that ordinary citizens would "impede" the investigation. The attorney general, whose constitutional and statutory duty it is, is seeking the help and scrutiny of the ordinary citizen. He does not fear that ordinary citizens will impede his work--nor should the courts. This was not raised as a legal issue, and the reason given is not a legal reason.

4. <u>A grand jury would be a financial burden on the people of Lewis and Clark County.</u> A price tag should not be put on justice. Also, a grand jury may not result in an increased financial burden. Lewis and Clark County is where the seat of government is by our Constitution (Art. III, sec. 2). Matters arising out of that government's operation will necessarily affect Lewis and Clark County. Criminal prosecutions involving acts committed in Lewis and Clark County will be tried here. It may well be that a grand jury would result in a better case being

prepared, thus resulting in less trial expense rather than more. But, conceding that it may cost more, the same thoughts are expressed by the citizens of other counties where state governmental activities or institutions are located. Powell County, where the state prison is located, has, and always has had, an extra burden as well as some benefits. The legislature has, and may well again, in good conscience attempted to equalize this burden. In any event, district judges are judicial officers of state government, and their considerations are to state government. The cost of a grand jury is not a sufficient legal reason.

5. A county grand jury cannot investigate a state-wide matter. This last reason is palpably erroneous. The application made related to the practices of state officials and/or employees of the Workmen's Compensation Division whose offices are located in Lewis and Clark County. The application asked that a grand jury be empaneled "for the purpose of inquiring into public criminal offenses, committed or triable in Lewis and Clark County * * * and also, for the purpose of inquiring into allegations of willful and corrupt misconduct in office by public officers within the County of Lewis and Clark * * *." (Emphasis added.) Obviously the seat of government and the headquarters of the agency are the hub of the wheel. Crimes committed in a county are crimes against the state and are proper subjects of a grand jury convened in that county. Problems of venue and jurisdiction may arise, but that is no concern at this state.

During the oral presentation of counsel for the respondent judges, the merits and demerits of the grand jury system were alluded to. It, the grand jury, is a part of our governmental structure. We need not debate its strengths and weaknesses. Then too, counsel for respondents argued that sufficient detailed facts were not presented to the district judges to cause them to

exercise their discretion. It is seen that the order gives detailed reasons for denial--not one of which suggests a lack of facts. Had the judges desired facts more than they had, it seems clear that they would have said so.

A reading of the order, heretofore quoted, seems to bring forth the thought that the respondent judges believed that a showing of "necessity" had to be made in a sense of "absolute necessity". But a reading of the entire Chapter 14, Title 95, R.C.M. 1947, and considering that grand juries are constitutional bodies, Art. II, Sec. 20, providing an alternative method of initiating criminal charges, the word "necessary" does not mean absolutely "necessary".

Now, heretofore we have examined each of the reasons given for denying the request for a grand jury; we have found each reason legally wanting. But, because the reasons are wrong, does it follow that there has been an abuse of discretion sufficient to invoke the supervisory control of this Court?

As heretofore indicated, this Court has, on at least two prior occasions, reviewed the district court's discretionary functions and found an abuse of discretion sufficient to invoke the supervisory control of this Court. State ex rel. Harrison v. Dist. Ct., supra; State ex rel. Hanrahan v. Dist. Court, supra.

Respondents' counsel argued that a reasonable man test should be used. The reasons given by the respondent judges are erroneous as a matter of law, and the "reasonable man" test does not apply. This application by the constitutional legal officer of the state, after a year of investigative effort, with a wealth of investigative findings and assertions, establishes the necessity for a grand jury as the term "necessary" is used constitutionally and by statute. The attorney general confesses an inability to achieve a successful investigatory conclusion

- 13 -

whether it result in incriminations or exonerations. This application by the attorney general in all its detail, albeit no names were specifically mentioned, establishes a showing of the need for a grand jury.

On December 26, 1974, the two respondent judges filed a praecipe requesting this Court to take note of Lewis and Clark County District Court Causes #3937 and 3938, entitled respectively, State v. John J. Carden and State v. John J. Carden and Gloria Eusik Carden. The praecipe was to the effect that the question of the ability of the attorney general to subpoena witnesses under section 95-1801 was now moot, and apparently respondent judges felt their position in their order of November 24, 1974, heretofore quoted, was even more justified.

This Court has obtained copies of all the pertinent papers in the above mentioned district court causes, including the supporting affidavits and the legislative audit report, this time with names, dates and places. A reading of those pertinent papers reveals a sordid web of ethical and criminal violations involving numerous individuals, both official and unofficial. Included therein are allegations of involvement of the judicial branch of government, a judge and attorneys as officers of this Court. With particular reference to matters arising during and out of the case of Gazette Printing Co. v. Carden, ____Mont.____, 517 P.2d 361, 30 St.Rep. 1161, decided by this Court on December 26, 1973, if the allegations be true, even this Court has been deceived; while we were deceived, we arrived at the correct result by reversing the district court order. These matters arising since the presentation of the attorney general's application makes it even more imperative that the entire matter be subjected to the scrutiny of a grand jury to aid the attorney general in his investigation; and thus the discretion of the district judges

- 14 -

must be exercised favorably to the application of the attorney general.

Finding no legal reasons for the denial of the attorney general's application for a grand jury, we find that it was, in law, an abuse of discretion for the district court to deny that application.

Accordingly, a writ shall issue from this Court directing the judges of the First Judicial District to empanel a grand jury consistent with the attorney general's application therefor.

_____
Chief Justice

_____
Wesley Castles

_____

_____

_____
Justices

- 15 -