No. 13437

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

IN THE MATTER OF SECRET GRAND JURY
INQUIRY, JOHN AND JANE  DOES THIRTY
THROUGH THIRTY-NINE

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Appellant:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Howard M. Gilbert, Special Prosecutor argued and
Thomas Budewitz, Assistant Attorney General, argued,
Helena, Montana
Hon. Gordon R. Bennett, District Judge, argued,
Helena, Montana
Dexter L. Delaney, affirmative position argued,
Missoula, Montana

For Respondent:

Robert Emmons, negative position, argued, Great Falls,
Montana

---

Submitted: July 7, 1976

Decided: AUG 18 1976

Filed: AUG 18 1976

_Thomas J. Kearney_

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is a petition of Hon. Gordon R. Bennett, presiding district judge in charge of the Lewis and Clark County grand jury, requesting in effect a declaratory judgment from this Court on certain issues raised in the grand jury proceedings of the Workmen's Compensation Division, Department of Labor and Industry, State of Montana.

Three issues are presented:

1) What authority does the district court have over grand jury subpoenas?

2) What authority has the district court to examine the proceedings of the grand jury to determine if its instructions, given upon empanelment are being adhered to?

3) What authority has the district court to determine whether agents of the grand jury, such as investigators, are adhering to the law or conducting themselves appropriately as attaches of the court?

The petition was set for oral argument before this Court on July 7, 1976, together with several other matters arising out of the grand jury investigation. Several counsel argued for this Court to accept the district court's petition, while others argued this Court had no authority to issue an advisory opinion, and there was nothing before the Court upon which to make a determination, either by appeal or by supervisory control.

With the argument that this Court has no jurisdiction, we cannot agree. In the first instance, the petition of Judge Bennett is not one for an advisory opinion. Advisory opinions are those

opinions issued by a court in response to a request from some other branch of government, such as the legislative or executive, asking for information concerning matters of law. 16 C.J.S. Constitutional Law §150. We are here involved with justiciable issues arising from bona fide controversies in the district court.

We consider Judge Bennett's questions as justiciable controversies contemplated by Rule 57, Montana Rules Civil Procedure. First, a justiciable controversy requires that parties have existing and genuine, as distinguished from theoretical, rights or interests. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument invoking a purely political, administrative, philosophical or academic conclusion. Third, it must be a controversy the judicial determination of which will have the effect of a final judgment in law or decree in equity upon the rights, status or legal relationships of one or more of the real parties in interest, or lacking these qualities be of such an overriding public moment as to constitute the legal equivalent of all of them. The decisions of this Court recognize and support this definition. See: The Forty-Second Legislative Assembly v. Lennon, 156 Mont. 416, 420, 481 P.2d 330; Conrad et al. v. Managhan et al., 157 Mont. 335, 485 P.2d 948; State ex rel. Kvaalen v. Graybill, 159 Mont. 190, 496 P.2d 1127; Woodahl v. Montana Board Natural Resources and Conservation, 163 Mont. 193, 516 P.2d 383; State ex rel. Irvin v. Anderson, 164 Mont. 513, 525 P.2d 564.

As this Court stated in Lennon, in taking jurisdiction under the Montana Uniform Declaratory Judgments Act, Title 93, Chap. 89, R.C.M. 1947:

"A declaratory judgment action is a proper proceeding in which to reach and answer the legal issues raised in this proceeding. A court of record in Montana is specifically granted the power 'to declare rights, status, and other legal relations' of a party (section 93-8901, R.C.M. 1947) which 'are affected by a statute' (section 93-8902, R.C.M. 1947) and in which a declaratory judgment 'will terminate the controversy or remove an uncertainty' (section 93-8905, R.C.M. 1947). This is prescisely the situation that exists in the present case. * * *"

First, we outline a brief factual setting of the grand jury cases. In 1974, the Montana legislature enacted section 79-2315, R.C.M. 1947, which provides in pertinent part:

"The attorney general shall conduct on behalf of the state, all prosecutions for public offenses disclosed by an audit of a state agency performed by the legislative auditor. If the attorney general shall decline such prosecution or shall fail to commence action on a public offense within a reasonable time the county attorney of the appropriate county shall conduct on behalf of the state such prosecution."

Pursuant to the direction of section 79-2315, the attorney general began an investigation arising out of an audit of the Workmen's Compensation Division and requested the two judges of the first judicial district to call a grand jury. This request was denied and the attorney general applied to this Court for a writ of supervisory control, directing the two judges to empanel a grand jury. In State ex rel. Woodahl v. District Court, 166 Mont. 31, 530 P.2d 780, 32 St.Rep. 11, this Court ordered the empanelment of a grand jury and since that time the grand jury has been functioning, resulting in a number of indictments. Due to numerous delays in getting cases to trial, this Court issued this order dated June 15, 1976, entitled "In the Matter of the Workmen's Compensation Litigation", this Court's No. 13410:

- 4 -

"It appearing in the light of recent events that the rights of the public, the state, the defendants and the judiciary are being subordinated to personal and extraneous ends and purposes,

"And it appearing that the Montana Supreme Court should act under its general supervisory powers pursuant to Art.VII, Sec. 2 of the Montana Constitution, in order to remedy and mitigate the effects of the foregoing situation,

"IT IS ORDERED:

"(1)   That the attorney general of Montana and other public prosecutors, all defense counsel, and the presiding district judges in all pending criminal cases involving the Workmen's Compensation investigations and prosecutions are directed to appear at a Conference to be held in the Courtroom of this Supreme Court on the 21st day of June, 1976, at 2:00 p.m.

"(2)   That the Commission on Practice is directed to investigate the conduct of all public prosecutors and defense attorneys in pending Workmen's Compensation litigation, determine whether there are any violations of the Code of Professional Responsibility and transmit the Commission recommendations, including disciplinary action, if indicated, to this Court in the usual manner.

"(3)   That in order to prevent further injury to the rights of the public, the state, the defendants and the judiciary pending the Conference herein provided, all counsel, their staffs, clerks, stenographers and attaches are ordered and directed to refrain directly or indirectly from public comment in any way relating to the litigation heretofore described..

"(4)   Any violation of this order shall subject the offender to proceedings for contempt of court.

"(5)   The Clerk of this Court is directed to cause notice to be given by mailing a true copy hereof forthwith to all public prosecutors, defense counsel, and presiding district judges in all pending Workmen's Compensation cases. District judges shall bring the district court file to the Conference herein provided.

"(6)   No excuses will be accepted for nonattendance at said Conference."

Following the hearing on June 21st, 1976, Judge Bennett petitioned this Court for a declaratory judgment, this Court's No. 13437, as to the heretofore enumerated three questions. Underlying the questions is a basic question as to the nature of a grand jury

- 5 -

proceeding, which must be answered before giving specific answers to Judge Bennett's questions.

The Supreme Court of the United States discussed the nature of grand jury proceedings in United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L ed 2d 561, 568, 569, 572:

> "Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. 'It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.' Blair v. United States, 250 US 273, 282, 63 L Ed 979, 39 S.Ct. 468 (1919).

> "The scope of the grand jury's powers reflects its special role in insuring fair and effective law enforcement. A grand jury proceeding is not an adversary hearing in which guilt or innocence of the accused is adjudicated. Rather, it is an ex parte investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person. The grand jury's investigative power must be broad if its public responsibility is adequately to be discharged. * * *"

There is a grave public need for a grand jury which may conduct an unfettered and uninterrupted investigation. The grand jury has a responsibility to the public to thoroughly investigate the matters before it. The public must know that no lead went uninvestigated, that the public may have confidence in the full and fair administration of justice.

Measuring the public need for a full, broad grand jury investigation against any potential harm to a witness who has been subpoenaed, it is clear the need for an unfettered grand jury is much greater. What, if anything, is lost by anyone if the grand

jury hears evidence from a witness a second time, even if that evidence was conceded to be irrelevant to the grand jury's basic investigation. The grand jury conducts its investigation in secret, and its investigation is not adversarial. The grand jury does not determine guilt or innocence, it only determines if criminal proceedings should be begun. Most of the witnesses that appear before the grand jury will never be indicted, but the grand jury needs their testimony simply to continue its investigation. The witnesses lose nothing by testifying. The grand jury has a right to every man's evidence, even if it would be embarrassing to him personally. Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L ed 2d 626. If a witness should be later indicted, he would be accorded the full range of rights granted to him as a defendant in a criminal case. If, at that time, evidence is offered that is irrelevant an objection would lie, and the legal question can be determined in a court of law.

The constant interruption of the grand jury by witnesses who wish to litigate the validity of the subpoenas which call them before the grand jury, could easily result in the investigation coming to a grinding halt.

The logic of the United States Supreme Court in Calandra explaining why the exclusionary rule should not apply to grand jury proceedings applies with equal force to the questions now before this Court:

> "* * * Because the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial. Permitting witnesses to invoke the exclusionary rule before a grand jury would precipitate adjudication of issues hitherto reserved for the trial on the merits and would delay and disrupt grand jury proceedings.

> Suppression hearings would halt the orderly progress
> of an investigation and might necessitate extended
> litigation of issues only tangentially related to the
> grand jury's primary objective. The probable result would
> be 'protracted interruption of grand jury proceedings,'
> * * * effectively transforming them into preliminary trials
> on the merits. In some cases the delay might be fatal to
> the enforcement of the criminal law. Just last Term we
> reaffirmed our disinclination to allow litigious interference
> with grand jury proceedings:
>
>> "'Any holding that would saddle a grand jury with
>> minitrials and preliminary showings would assuredly
>> impede its investigation and frustrate the public's
>> interest in the fair and expeditious administration of
>> the criminal laws.' United States v. Dionisio, 410 U.S. 1,
>> 17, 35 L Ed 2d 67, 93 S.Ct. 764 (1973)."

The questions posed by Judge Bennett must be answered against the backdrop of this strong policy against saddling the grand jury investigation with delays for preliminary hearings that would frustrate the public need for an unfettered grand jury investigation. This Court will not tolerate "litigious interference with grand jury proceedings".

We now consider Judge Bennett's concern as to the authority of a district judge over grand jury subpoenas in the instant case. The statutory section in the Code of Criminal Procedure which applies to grand jury subpoena power is section 95-1407, R.C.M. 1947, which provides:

> "A subpoena requiring the attendance of a witness before
> the grand jury <u>may be signed and issued by the county
> attorney, by the grand jury or by the judge of the district
> court,</u> for witnesses in the state, in support of the pro-
> secution, for those witnesses whose testimony, in his
> opinion is material in an investigation before the grand
> jury, and for such other witnesses as the grand jury upon
> investigation pending before them may direct." (Emphasis
> added.)

The statute allows the court, the county attorney, or the grand jury to issue subpoenas. It allows any one of the three to subpoena witnesses whose testimony is, in the caller's opinion, material.

However, in the instant case, the judge's charge is the limiting feature to the scope of the grand jury.

The general rule is that a grand jury is entitled to obtain testimony or subpoena all evidence necessary for its deliberations. However, in certain circumstances, exceptions to the general rule are made. For example, there is the necessity for conformity with the reasonableness requirements of the Fourth and Fifth Amendments to the United States Constitution.

The court may quash a subpoena duces tecum which is constitutionally overbroad. Hale v. Henkel, 201 U.S. 43, 26 S. Ct. 370, 50 L ed 652. The court may quash a subpoena duces tecum which violates the Fifth Amendment's right against self-incrimination. Boyd v. United States, 116 U.S. 616, 6 S. Ct. 524, 29 L ed 746; Losavio v. District Court In & For Tenth Jud. Dist., (Colo. 1975), 533 P.2d 32. A grand jury may subpoena a witness even though it is powerless to force him to testify over a valid claim of self-incrimination absent a grant of immunity. United States v. Winter, 348 F.2d 204.

Quashing a subpoena because there is no showing of the materiality of the testimony sought is clearly erroneous. United States v. United States District Court, 238 F.2d 713. This does not mean that the district court may never quash a grand jury subpoena no matter how far afield the grand jury may go from the area of its original investigation, only that this power is limited to the most extreme cases where the court, by not quashing the subpoena, would be permitting a gross abuse of process. In United States v. United States District Court, 238 F. 2d 713, 722, the Court said:

> "* * * While the judge has the supervisory duty to see that its process is not abused or used for purposes of

- 9 -

oppression or injustice * * * there should be no cur-
tailment of its inquisitorial power except in the
clearest cases of abuse."

Applying that test, the clearest case of abuse requires something
more than recalling witnesses whose testimony is relevant to the
original inquiry. Oppression is something substantially more
than telling a witness that if he lies before the grand jury he will
be charged with perjury. Only in a much stronger case, where there
was gross misconduct associated with the use of process, would
the court be justified in interfering with the grand jury's investi-
gation by quashing the grand jury's subpoena.

From the foregoing discussion it is apparent and we hold,
that the district court may not interfere with the grand jury's
subpoena power except (a) where the subpoena duces tecum is over-
broad; (b) where the subpoena requires self-incrimination; (c)
in the clearest case of grossly abusive conduct; (d) where the
grand jury's investigation goes beyond the scope set forth above;
or (e) where, if the court did not interfere, the result would be
an abuse of process.

Judge Bennett's second issue revolves around the authority
of the district court to inquire into the grand jury proceedings
to determine if the limits of the charge are being violated. It
is clear the district court may inquire into the grand jury proceedings
only to see that it stays within the statutory provisions of section
79-2315, R.C.M. 1947.

The Code of Criminal Procedure directs the grand jury to
retire to a "private room" and look into the offenses cognizable
by it, section 95-1404(b), R.C.M. 1947. Section 95-1406, R.C.M.
1947, allows the grand jury to ask advice of the district court judge,
but it requires, absent a request for such advice, that the district
judge not be present during the sessions of the grand

- 10 -

jury. The district court is not to monitor the grand jury

proceedings. The United States Supreme Court in Calandra at

38 L ed 2d 561, 568, said:

> "No judge presides to monitor its proceedings.
> It deliberates in secret and may determine alone
> the course of its inquiry."

In re Kittle, 180 F. 946, 947, where Felix Frankfurter

was the Assistant United States District Attorney, Federal

District Judge Learned Hand  refused to relieve a witness from

examination by a grand jury, stating:

> "* * * They are the voice of the community accusing
> its members, and the only protection from such
> accusation is in the conscience of that tribunal.
> Therefore, except in sporadic and ill-considered
> instances, the courts have never taken supervision over
> what evidence shall come before them * * *."

To summarize the second matter of concern to Judge Bennett,

the district court has authority to limit the area of a grand jury

investigation by its charge given at empanelment and the district

court may inquire into the grand jury proceedings to ascertain

if any instructions which were given are not being followed.

However, such authority is restricted to the limits previously

referred to in this opinion as set forth in section 79-2315, R.C.M.

1947.

Judge Bennett's third matter of concern is the extent of the

authority of the district court over the agents of the grand jury

to ascertain if these agents are obeying the law or conducting them-

selves appropriately while the grand jury is conducting its investi-

gation.

We noted in this Court's order setting a hearing on this

matter, that one of the matters of concern is a petition filed

by counsel for John Boyer, William F. Pellegrini, John C. Drescher

and Wade J. Dahood to have certain subpoenas quashed. To summarize the affidavits and their allegations, we note that the fact an indictment came down, partially from their testimony on their first appearance before the grand jury, does not close off further inquiry. Each of the first three named witnesses later signed affidavits which reflect upon the accuracy, veracity and completeness of their prior grand jury testimony. Since an indictment against Dahood was partially based on their testimony, it would appear to this Court that it is not only relevant but absolutely necessary for the grand jury to ascertain whether or not the allegations are correct. The very integrity of the entire investigation leading to the Dahood indictment may depend upon the veracity and accuracy of the testimony given by the three witnesses.

The petition of Wade J. Dahood, filed earlier, related to testimony of another witness, Henry T. Laughlin. The filing of that affidavit resulted in an unusual closed hearing before Judge Bennett at which Laughlin's testimony was taken, a transcript of which was submitted and considered by this Court in State ex rel. Woodahl v. District Court, ____Mont.____, ____P.2d____, 33 St.Rep. 537, (June 1976). That transcript has possible discrepancies between Dahood's affidavit and Laughlin's subsequent testimony respecting the events described in the affidavit. To not have called Laughlin back to the grand jury for more testimony, as was done, would have interfered with the grand jury's full investigation of the Dahood case. The Dahood petition contains only speculation and its conclusions, that the witnesses are being recalled for harassment and intimidation, are without grounds either in law or fact. A legitimate and lawful purpose for the subpoenas exists; they should issue. See: In re Grand Jury Subpoenas Duces

Tecum Addressed to Certain Executive Officers of the M.G. Allen &

Associates, Inc., 391 Fed. Supp. 991 (1975).

In Blair v. United States, 250 U. S. 273, 39 S. Ct. 468,

63 L ed 979, 982, it was noted:

> "'It is clearly recognized that the giving of
> testimony and the attendance upon court or grand
> jury in order to testify are public duties which
> every person within the jurisdiction of the govern-
> ment is bound to perform upon being properly summoned
> * * *. The personal sacrifice involved is a part of
> the necessary contribution of the individual to the
> welfare of the public. The duty, so onerous at times,
> yet so necessary to the administration of justice
> according to the forms and modes established in our
> system of government * * * is subject to mitigation
> in exceptional circumstances; there is a constitu-
> tional exemption from being compelled in any criminal
> case to be a witness against oneself, entitling the
> witness to be excused from answering anything that will
> tend to incriminate him * * * some confidential matters
> are shielded, from considerations of policy, and per-
> haps in other cases for special reasons a witness may be
> excused from telling all that he knows.

> "'But, <u>aside from exceptions and qualifications--</u>
> and none such is asserted in the present case---
> <u>the witness is bound not only to attend, but to tell</u>
> <u>what he knows in answer to questions framed for the</u>
> <u>purpose of bringing out the truth of the matter under</u>
> <u>inquiry</u>.'" (Emphasis supplied.)

The district court judge has limited power over a grand jury.

Once it is called, the grand jury is not subject to control except

as heretofore set out and discussed in this opinion.

In United States v. Doe (Ellsberg), 455 F.2d 1270, 1274, the

Court said:

> "We recognize * * * that grand jury proceedings cannot
> be policed in any detail. It is a price we pay for
> grand jury independence * * *."

In that same case, in a memorandum attached at the end of the

opinion, appears a statement which we think applies in the instant

case:

> "* * *defendants seek to break up the play before it
> has started, and then claim the government was offside."

This Opinion shall constitute a declaratory judgment.

Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice Gene B. Daly dissenting

I dissent.

Judge Bennett received a petition in his court June 22, 1976 requesting an order to show cause to suspend or cancel subpoenas directed to one Pellegrini, Boyer and Drescher, persons who had previously testified before the grand jury. The petition alleges certain acts of harassment, intimidation and improper conduct on the part of the officers in charge of the grand jury function. The pleading affirmatively alleges that the petition is one and the same that was previously presented to the district court and brought to the Supreme Court on supervisory control. This Court heard the matter on June 7, 1976, and on June 18, 1976, and ordered the order to show cause and stay set aside as to the petitioners because no sworn statements by applicants accompanied the petition that would allow the Court to proceed. The sworn support now has been filed with the present petition together with memorandum of authority.

Judge Bennett attached a copy of this petition and supporting documents to a communication addressed to the Chief Justice of this Court alleging that it appears to be the same petition previously presented to his court and the subject of our order of June 18, 1976, supra, and alleging certification or documentation held lacking before has now been added.

Judge Bennett advises that he has not acted on the petition and forwarded same to the Supreme Court because the Supreme Court has suggested "that the pith and moment of these workmen's compensation proceedings justify special procedures. This Court [Judge Bennett's] has learned by experience that any action taken in relation to the grand jury, other than approving of expense vouchers and ordering the filing of indictments, will be met by an application for a writ of supervisory control, which will be

- 14 -

heard by the Supreme Court. It is then, the intent of this petition [Bennett's] to eliminate the extraordinary expenses and delay occasioned by such proceedings."

Judge Bennett further requests:

" * * * that the Supreme Court issue its opinion on the following questions raised by the aforesaid petition" [The petition filed in the district court].

Judge Bennett lists the three questions set out above in the majority opinion and concludes:

"You are respectfully requested to review the matters set forth herein and to take appropriate action or advise this court thereon." (Emphasis supplied.)

We have here a petition properly filed with the district court together with sworn allegations to move the district court to grant a fact hearing to determine if the petitioners are entitled to relief. Instead it is here on a request that this Court sit as a district court to save extraordinary expense and delay and to "act" on the petition or in the alternative "advise" the district court.

First the majority through some kind of reasoning, not at all clear to me, determines that the request of Judge Bennett is not one for "advisory opinion" or "advice" as set forth above but this becomes, as I understand it, a declaratory judgment action. They cite Rule 57, M.R.Civ.P., and various past declaratory judgment cases heard by this Court, none of which are in point in this matter.

Rule 57 requires that section 93-8901- 93-8916, R.C.M. 1947, must be observed. The first obvious problem is how do we sit as a district court on this petition and decide issues of fact without an evidentiary hearing? The facts alleged in the petition are not agreed facts by any means. Section 93-8911, R.C.M. 1947, seems to indicate that if facts are to be resolved all

- 15 -

parties must be heard or else they would not be bound. Some
of the facts the majority has decided without a evidentiary
hearing are that the oppression pleaded in the petition is
not sufficient to warrant relief; that certain indictments
filed were based on the testimony of petitioners; that further
testimony of petitioners is relevant and necessary; that the
Dahood petition contains only speculation and conclusions;
that there are no grounds in law or fact to support harassment;
the subpoenas are grounded on legitimate and lawful purpose
that the defendants "seek to break up the play before it has
started, and then claim the government was offside"; that,
"Most witnesses that appear before a grand jury will never be
indicted* * * The witnesses lose nothing by testifying * * *.
If a witness should later be indicted, he would be accorded the
full range of rights granted to him as a defendant in a criminal
case. If, at that time, evidence is offered that is irrelevant
an objection would lie, and the legal question can be determined
                              constant
by a court of law * * * The/interruption of the grand jury by
witnesses who wish to litigate the <u>validity</u> of the subpoenas * * *
could easily result in the investigation coming to a grinding
halt.", and so on. Even if this procedure could be characterized
as a declaratory judgment action it has gone far beyond the orig-
inal scope of inquiry. See National Surety Corp. v. Kruse, 121
Mont. 202, 192 P.2d 317, 319. It is also interesting to note
that this Court in 1962 seemed to hold that "Petitioner fails to
understand the purpose of the Declaratory Judgment Statutes which
are civil and not criminal remedies". Harold Goff v. State of
Montana and Ed Ellsworth, Jr., 141 Mont. 605, 374 P.2d 862. See
also In the Matter of Charges Against Robert DeWar, Police Officer,
_____Mont._____, 548 P.2d 149, 33 St.Rep. 353 (1976) and State ex rel.
Forsythe v. Coate, _____Mont._____, 546 P.2d 1060, 33 St.Rep. 310,
(1976).

- 16 -

It is my position that the questions by Judge Bennett have already been generally decided by this Court. There is no law that permits this Court to decide facts in a vacuum which will operate directly on individual petitioners in a district court cause. The district court should first determine the facts and make its ruling and until an order is entered by the district court there is no proper application before this Court on which the majority can render its opinion. There are no circumstances presented that would in law permit this Court to enter a declaratory judgment which would be binding on the petitioners in the district court.

The request by Judge Bennett should be dismissed and the matter returned to the district court so that the foundation petition preceding all of this can be heard and processed in an orderly judicial proceeding.

_____
Justice

Mr. Justice Frank I. Haswell dissenting:

I dissent.

In my view, the majority opinion is not a declaratory judgment, binds no one, and it furnishes no precedent in future cases. There are no pleadings as required by Montana's Uniform Declaratory Judgments Act. Section 93-8901 et seq.; National Surety Corp. v. Kruse, 121 Mont. 202, 192 P.2d 317. All persons who have or claim an interest which would be affected by the declaration have not been made parties as required by section 93-8911, R.C.M. 1947. The issues in this matter have not been framed in a factual setting permitting entry of a declaratory judgment. National Surety Corp. v. Kruse, supra.

Instead of a bona fide substantial controversy between identifiable parties seeking specific relief through a decree of conclusive character as required to vest this Court with jurisdiction (Chovanak v. Matthews, 120 Mont. 520, 188 P.2d 582), we simply have a request for answers to three broad, theoretical and abstract questions. In short, the majority has rendered an advisory opinion without legal authority to do so. The majority opinion is not a declaratory judgment but simply a gratuitous opinion, furnishing neither guidance nor precedent, and binding no one, not even its author. I foresee substantial mischief in the broad, sweeping language employed.

I would remand this matter to the district court for sufficient particularization to bring it within the provisions of the Uniform Declaratory Judgments Act before accepting jurisdiction.

_____
Justice

- 18 -